RICHARD E. NICKEL *et ux.* v. NICHOLAS VOGEL, *as
Administrator, etc.*

No. 15,189. (92 Pac. 1105.)

SYLLABUS BY THE COURT.

1. ADMINISTRATORS — *Appointment* — *Jurisdiction of Probate
Court.* The jurisdiction of a probate court in this state to
appoint an administrator does not depend upon the existence
of debts due from the estate, nor upon the existence of as-
sets which can be legally applied to the payment of such
debts.

2. LIMITATION OF ACTIONS—*Conflict of Laws.* The statute of
limitations of this state applies exclusively in all actions
pending in the courts of this state, except as otherwise pro-
vided by law.

3. ——— *Action against Non-residents.* In an action on a
promissory note the bill of particulars alleged in substance
that the note was made, executed and delivered at Atchison,
Kan. The note reads:

"$189.                ACTON, CAL., December 18, 1895.
   "Six months after date we promise to pay to the order of
Minnie Duehren one hundred eighty-nine dollars at her order,
value received, with interest at 8 per cent. per annum from
maturity until paid.               R. E. NICKEL,
                                   ANNA C. NICKEL."

It was further alleged that the payee resided in Kansas at
all times prior to her death, which occurred July 29, 1898.
After receiving the note she married Nicholas Vogel, the
plaintiff, who on May 7, 1904, was appointed administrator
of her estate. The makers of the note were absent from the
state of Kansas all the time after its delivery to the payee
except for the period of about two weeks prior to the com-
mencement of the action, which was begun June 25, 1904,
by Nicholas Vogel, as administrator. *Held,* that a demurrer
to the pleading was properly overruled.

Error from Atchison district court; BENJAMIN F.
HUDSON, judge. Opinion filed November 9, 1907. Af-
firmed.

STATEMENT.

ON June 25, 1904, the defendant in error filed a bill
of particulars in the city court of Atchison against
the plaintiffs in error which reads:

40—76 KAN.

"The plaintiff, as such administrator, for his cause of action states:

"(1) That on the 18th day of December, 1895, at Atchison, Kan., the defendants made, executed, and delivered to Minnie Duehren, who is designated in the note herein sued on as Minnie Duehren, their promissory note, a copy of which is hereto annexed, marked 'Exhibit A,' and made a part of this bill of particulars; that the words 'Leavenworth, Kan.,' 'days,' 'First National Bank, of Leavenworth, Kan.,' were stricken out, and the words 'Acton, Cal.,' and 'her order' added and inserted by the defendant, Richard E. Nickel, prior to the execution and delivery of the said note to the said payee, Minnie Duehren.

"(2) That the defendants, or either of them, have not paid the said note nor any part thereof, and that there is due from the defendants to the plaintiff, as administrator, one hundred and eighty-nine dollars, with interest thereon at the rate of eight per cent. per annum from June 18, 1896; that the plaintiff hereby remits the excess over and above three hundred dollars on this claim, and makes demand for three hundred dollars only on account of such principal and interest; that the plaintiff has demanded payment from the defendants, who refuse to make payment.

"(3) That at the time the cause of action upon the note herein sued on accrued, both the defendants were out of the state of Kansas; that both the defendants came into the state of Kansas after the said cause of action accrued, remained about two weeks in this state, and at the end of said two weeks both defendants again departed from this state, and have been continuously absent from the state of Kansas until May or June, 1904.

"(4) That on the ⸺ day of September, 1897, at Atchison, Kan., the said Minnie Duehren intermarried with Nicholas Vogel, who is the plaintiff administrator in this action, which marriage relation continued until the time of her death.

"(5) That on the 29th day of July, 1898, at Atchison, Kan., the said Minnie Vogel, formerly Duehren, died intestate, and that at all the times herein stated she was a resident of Kansas.

"(6) That on the 7th day of May, 1904, letters of administration on the estate of the said Minnie Vogel

were issued by the probate court of Atchison county, Kansas, to the plaintiff.

"(7) That the plaintiff thereupon duly qualified as such administrator and entered upon the discharge of the duties of his office, and that said letters of administration have not been revoked.

"Wherefore, the plaintiff prays for judgment against the defendants for the sum of one hundred eighty-nine dollars, with interest thereon from June 18, 1896, not in excess of three hundred dollars, on account of such principal and interest, and for costs of this suit."

"EXHIBIT A.

"$189.          ACTON, CAL., December 18, 1895.
"Six months after date we promise to pay to the order of Minnie Duehren one hundred eighty-nine dollars at her order, value received, with interest at 8 per cent. per annum from maturity until paid.
                              R. E. NICKEL,
                              ANNA C. NICKEL."

To this a demurrer was filed which reads:

"Now come the defendants, each and both, and demur to plaintiff's bill of particulars filed herein, for the reasons following, to wit:

"(1) Because said petition shows on its face that the pretended cause of action attempted to be stated therein is barred by the statute of limitations, and that no cause of action has accrued against defendants in favor of plaintiff within five years next prior to the commencement of this action.

"(2) Because the said petition shows on its face that the plaintiff has no legal capacity to sue or maintain said action.

"(3) Because the said petition shows on its face that the plaintiff is not the real party in interest.

"(4) Because the said petition does not state well-pleaded facts sufficient to constitute a cause of action against the defendants."

The demurrer was sustained by the city court, but upon appeal it was overruled in the district court, and this ruling is assigned as error.

*Henry Elliston,* for plaintiffs in error.
*Hugo Orlopp,* for defendant in error.

The opinion of the court was delivered by

GRAVES, J.: It is claimed by the plaintiffs in error that under the statutes relating to executors and administrators an administrator can be appointed only when the intestate leaves property which is liable for the payment of existing and enforceable debts due from the estate; otherwise stated, that the law provides administrators solely for the purpose of enabling creditors to collect their claims against the estates of intestates who leave property which may be legally taken for that purpose. When all the debts due from the estate are barred by the statute of limitations, or the property left is exempt, then, according to this contention, no jurisdiction exists in the probate court to appoint an administrator.

At the time the administrator in this case was appointed more than six years had elapsed since the death of his intestate, and more than five years had elapsed after the creditors, if any, might have obtained the appointment of an administrator; and, therefore, it is urged, all claims against the estate were necessarily barred by the statute of limitations, which made the appointment void.

In support of their position the plaintiffs in error cite several sections of the statutes relating to executors and administrators and descents and distributions, which it is urged, when construed together, make a scheme for the care of estates which excludes administrators for any purpose other than as stated. There is nothing in these sections which directly supports this claim. The contention depends entirely upon an inference drawn from the language of a few sections of chapter 37 of the General Statutes of 1901, enough of which to make the position clear is here given:

"Every executor or administrator shall, within sixty days after his appointment, or sooner if so ordered by the probate judge, make and return upon oath into

court a true inventory of all the goods, chattels, moneys, rights and credits of the deceased which *are by law to be administered,* and which shall have come into his possession or knowledge, and also of all the real estate of the deceased." (Gen. Stat. 1901, § 2844.)

"Upon proper proof being made by an executor or administrator to the probate court, that any claim, debt or demand whatsoever belonging to the estate in his hands *to be administered* and accruing in the lifetime of the deceased, represented by such executor or administrator, cannot be collected," etc. (Gen. Stat. 1901, § 2868.)

"The executor or administrator shall, within three months after the date of his bond, sell the whole of the personal property belonging to the estate, which is liable to the payment of debts, and is *assets in his hands to be administered,* except the following: *First,* such as may be set apart to the widow and children, as exempt from the payment of debts. *Second,* such property as is specifically bequeathed shall not be sold until the residue of the personal estate has been sold, and is found by the executor or administrator to be insufficient for the payment of the debts of the estate. *Third,* the executor or administrator may defer the sale of the emblements or annual crops raised by labor, which were not severed from the land of deceased at the time of his death, beyond the three months herein prescribed for the sale of the assets, and the same may be sold before or after they are severed from the land, by the executor or administrator, with the approval of the probate court, and in the mode prescribed for the sale of other goods and chattels." (Gen. Stat. 1901, § 2874.)

"Every executor or administrator shall be chargeable with the amount of the sale bill; and also with all goods, chattels, rights and credits of the deceased which shall come to his hands and which *are by law to be administered,* although they should not be included in the inventory or sale bill." (Gen. Stat. 1901, § 2959.)

It is assumed that the words "to be administered," "which are by law to be administered," and "assets in his hands to be administered," as used in these sections, indicate that in contemplation of this law some estates are excluded from its provisions. In support

of this theory other sections of this chapter are referred to, which relate to the collection and preservation of the property of the estate and to the allowance and payments of debts. It is impractical to give copies of these numerous sections, and they are referred to as sections 5, 6, 42, 51, 55, 61, 62, 63, 173, 81, 108, 165 of chapter 37, and section 31 of chapter 33, of the General Statutes of 1901. The substance of these sections, considered together, is that the administrator shall file a statement of the indebtedness due from the estate, so far as can be ascertained; the lien of the debts on the real estate shall not be released on account of the administrator's bond; an inventory of all personal property shall be filed within sixty days, which, except that set apart to the widow and children as exempt, shall be appraised; all assets shall be collected by the administrator within one year after his bond is given; if it appear that the assets amount to no more than that which is exempt to the widow and children, and no debts are due from the estate, the court may in its discretion close the administration without further expense; all claims, whether due or not, must be presented within three years or become barred; during the three years there can be no distribution which will relieve the property from liability for the debts of the estate; and the residue of personal property, after administration is closed, descends the same as real estate.

We see nothing in these sections or elsewhere in the law of this state to uphold the position advanced by the plaintiffs in error. On the contrary, the first section of chapter 37 states when an administrator shall be appointed for the estate of a deceased citizen of this state. It reads:

"That upon the decease of any inhabitant of this state, letters testamentary or letters of administration on his estate shall be granted by the probate court of the county in which the deceased was an inhabitant or resident at the time of his death." (Gen. Stat. 1901, § 2806.)

Nickel v. Vogel.

There are no conditions, limitations or restrictions in the language of this section. When any inhabitant of this state dies intestate the probate court of the county of which the deceased was an inhabitant or resident shall appoint an administrator of the estate. The other provisions of the law merely provide the procedure for carrying out the administration.

The contention of the plaintiffs in error does not involve a question of propriety merely in appointing an administrator when there are no creditors whose rights should be protected, but it asserts a want of power to make an appointment under such circumstances. Section 173 of chapter 37 seems to be an answer to this theory. It reads:

"If upon the return of the inventory and appraisement it appears to the court that the whole amount of the estate is not more than that to which the widow and children are by law entitled, without being subject to the payment of debts, and that there are no debts due the estate, or so small that they would not defray the expenses of collection and of administration, the probate court may in its discretion make an order that such estate be delivered to the widow, and that all further advertisements, settlements and other proceedings under said administration be dispensed with, unless further estate be discovered, or the court order the administration to be proceeded with." (Gen. Stat. 1901, § 2979.)

There is no suggestion here that if it be discovered that there are no assets "to be administered" and no creditors to be satisfied the proceeding shall be dismissed as void from the beginning for want of jurisdiction; on the contrary, power is reserved for the court subsequently to proceed with the administration if it be deemed advisable so to do.

In our view, the provisions of the statute contemplate that an administrator shall be appointed by the probate court whenever the facts required by section 1 of chapter 37 of the General Statutes of 1901 are shown to exist, and whether or not administration shall

be continued will depend upon circumstances. If it appears, as claimed in this case, that there are no assets and no creditors, there would be no good reason for its continuance, and it might well be closed. If these facts appear when application for the appointment of an administrator is made, the application might well be refused. If, as in the cases of *Perry, Adm'r, v. St. J. & W. Rld. Co.,* 29 Kan. 420, and the *Estate of Mallory v. B. & M. R. Rld. Co.,* 53 Kan. 557, 36 Pac. 1059, the deceased was not a resident of the state of Kansas at the time of his death, and left no estate, then the application should be denied.

The ordinary procedure of administration furnishes a plain and practical method whereby it can be authoritatively ascertained whether there are creditors or not, and whether or not there are assets liable for the debts of the intestate. If the jurisdiction of the court depends upon the existence of assets and creditors, it would be necessary to determine these questions in each case before the court could entertain an application to make an appointment, which would be cumbersome, impractical and unsatisfactory. Judge Ellison, in the case of *Becraft v. Lewis,* 41 Mo. App. 546, when discussing this question, said: "If we can dispense with administration simply by offering proof that no debts are *known* to exist (which is all that testimony could show) we would make much confusion and overturn well-recognized modes of procedure." (Page 554.)

In the case of *Estate of Strong,* 119 Cal. 663, 51 Pac. 1078, when discussing a similar case, the court said:

"The whole subject-matter of dealing with the estates of deceased persons is one of statutory regulation, and the policy and intent of our statute very clearly contemplates that property of decedents left undisposed of at death (except in the instance of the homestead, acquired under certain circumstances as provided for in section 1474 of the code of civil procedure) shall, for the purposes of ascertaining and

protecting the rights of creditors and heirs, and properly transmitting the title of record, be subjected to the process of administration in the probate court. Indeed, there is no other method provided by the statute whereby the existence of creditors or heirs of decedents may be conclusively established." (Page 665.)

In the case of *Succession of Story*, 3 La. Ann. 502, it was said:

"Even in case there are no debts we do not undertake to say that an administrator cannot be appointed. There may be cases in which such an appointment would be advantageous—nay, necessary—to the interests of a succession; and the propriety of subjecting the succession to such a charge must rest with the discretion of the judge, on the facts before him." (Syllabus.)

In *Ferguson v. Templeton* (Tex. Civ. App.), 32, S. W. 148, a part of the opinion reads:

"The trial court concluded that the application showed that there were no debts due from the decedent, and held, as a matter of law, that, there being no debts, the probate court was without power to grant the administration. We know of no law, or decision by our supreme court, which restricts the grant of administration to cases in which there are debts due from the decedent. There are doubtless *dicta* which tend to support this assumption, but these *dicta* will be found in cases where the application for letters of administration was made so long a time after the death of the decedent that it was conclusively presumed that his estate had vested absolutely in his heirs, and was not, therefore, subject to administration for any purpose."

There seems to be a necessity for some responsible person to collect and care for the personal property belonging to an estate until it can be legally disposed of, either in payment of debts or by distribution. Estates may consist of large amounts of personal property, widely scattered, of a perishable nature, and the circumstances be such that it would be impractical for the heirs to collect and make satisfactory distribu-

tion thereof. Many considerations might be suggested which would make the appointment of an administrator useful and desirable, if not indispensable, even in cases where the claims of creditors do not exist. We are unable to concur in the proposition that the law relating to administrators was created solely for the benefit of creditors. It contains no provision which expressly so declares, and in our view a fair construction of it will not justify such a conclusion.

In addition to the argument based upon the language of the statute plaintiffs in error have cited in support of their position several authorities from different states, which we have examined but do not regard as controlling here. It is impossible to ascertain from any of these cases whether the statute being considered therein was the same as that of this state or not, and therefore the decisions are not helpful as authority.

We have not overlooked the fact that in the case at bar the difficulties hereinbefore suggested do not arise. Here, if any debts existed against the estate represented by the defendant in error, they were barred by the statute of limitations, and no necessity existed for administration on that account. The only asset belonging to the estate was the note sued upon, and the administrator, being the sole heir of the intestate, might have maintained an action thereon in his own name. Under these circumstances the court might have properly refused to make the appointment.

But an important rule of legal procedure, having general application, should not be determined solely upon the peculiar facts of an isolated case. To sustain this demurrer would practically decide that every probate court, before appointing an administrator, must determine whether any valid claims against the estate will be allowed within three years or not, and, if there should be, whether or not there will be assets for the payment thereof, and a mistake in this determination, whenever thereafter discovered, might be fatal to all

proceedings had in relation to the estate administered.

We do not think the law justifies such a decision. We conclude that the probate court of Atchison county had jurisdiction to appoint the defendant in error administrator, and he, as such administrator, had the right to recover upon the note in suit, unless prevented by the statute of limitations. Upon the latter proposition it is argued that the note by its terms is payable in the state of California; that when it became due the statute of limitations of that state began to run against it; and that, more than five years having elapsed, there can be no recovery. The period of five years is applied under the rule that in the absence of any evidence as to the statute of limitations of that state it will be presumed to be the same as here. We do not think the statute of limitations of another state applies to a suit in this state upon an ordinary promissory note which was made and delivered in this state to a citizen thereof. The general rule that the statute of limitations in force where an action is pending will control that case has no exceptions other than may be found in the law of such place. (*Hoggett v. Emerson,* 8 Kan. 262.) The only exception to this general rule in this state that can apply here is section 22 of the code, which reads:

"Where the cause of action has arisen in another state or country, between non-residents of this state, and by the laws of the state or country where the cause of action arose an action cannot be maintained thereon by reason of lapse of time, no action [can be] maintained thereon in this state." (Gen. Stat. 1901, § 4450.)

The bill of particulars shows that this note was made, executed and delivered in Atchison, Kan., and that the holder thereof resided there continuously thereafter until her death. It does not appear from the facts stated in the bill of particulars that the cause of action arose in another state between non-residents of this state, and therefore this statute does not apply. It is

alleged that the defendants have been absent from the state of Kansas all the time since the execution of the note, except for a period of about two weeks, and therefore the cause of action is not barred.

The demurrer was properly overruled, and the ruling is affirmed.