No. 28,646.

L. P. Sentney, *Appellee*, v. The Commercial National Bank, C. M. Williams, as Liquidating Agent, etc., J. S. Sifers and Frances Sifers, *Appellants;* The American National Bank, *Defendant.*

(275 Pac. 1081.)

Opinion filed April 6, 1929.

*C. M. Williams, D. C. Martindell* and *W. D. P. Carey,* all of Hutchinson, for the appellants.

*F. L. Martin* and *James N. Farley,* both of Hutchinson, for the appellee.

The opinion of the court was delivered by

Harvey, J.: This is an action on a promissory note and to foreclose as an equitable mortgage a deed given to secure its payment, and to hold a bank and its liquidating agent on a repurchase agreement. The action was tried first as between the plaintiff and the defendants who executed the note and mortgage deed, resulting in judgment for plaintiff, and as to this there has been no appeal. It was later tried on issues joined between plaintiff and the bank and its liquidating agent, resulting in a judgment for plaintiff. From this judgment the bank and its liquidating agent have appealed.

A more complete statement of the facts disclosed by the record is

as follows: The Commercial National Bank was a going institution for years. Its president and active managing officer was A. E. Asher until his death early in the year 1923, when A. H. Suter, formerly cashier, became its president. Sometime in 1924 it sold and transferred its live assets to the American National Bank of Hutchinson, and in November, 1924, C. M. Williams was by the comptroller of the currency appointed as liquidating agent of the Commercial National Bank. The plaintiff, L. P. Sentney, is a well-to-do resident of Hutchinson who had been a depositor in and had transacted business with the Commercial National Bank for many years. He had from time to time purchased notes from the bank on an agreement that the bank would guarantee their payment or repurchase them at or before maturity. At times an agreement had been made with respect to specific notes sold by the bank to plaintiff, and at other times with respect to a group of notes or several notes sold to absorb certain deposits. On February 2, 1922, an agreement, general in its nature, was put in the form of a letter by the president of the bank to plaintiff, as follows:

"We, as a bank, from time to time have been furnishing you some paper to absorb some money that you have on hand. This is to say to you that we will be very glad to take this paper up at maturity if you do not want to carry it any longer, and this shall be applicable to any paper that you may take from us in the future, but I do not think this guarantee is necessary as to the real-estate loans from the fact that they will be secured by good farm lands on such property that has ample security with them at the time you purchase. But, as to all other paper that you have taken from us or will take in the future, this guarantee will be good."

On further consideration, and perhaps on the ground that the instrument would authorize plaintiff to bring the paper in at any time before its maturity, and preferring to know that it be brought in at a definite time before maturity, the bank, by its president, on March 17, 1922, reduced the agreement to the form of a letter addressed to plaintiff, as follows:

"The matter of furnishing you from time to time paper to absorb your funds and keep them invested. Will say that we are willing to furnish you this paper from time to time if we have it to spare; provided you will bring this paper back fifteen days before its maturity that we may have it in time to notify the makers of the notes. We can put this into our collection department, give you a receipt for the notes left, and we will credit your account with the notes at maturity. This includes all former paper bought of us also."

The terms of these writings were discussed with and agreed to by plaintiff. On March 11, 1922, plaintiff, under the terms of the agree-

ment he had with the defendant bank, purchased from it a note of that date of the face value of $12,000, due in six months, executed by J. S. Sifers, and payable to the order of the Commercial National Bank, and on that date plaintiff gave to the bank his check for $11,580, being the amount of the note less interest to maturity. This check was accepted by the bank and charged to plaintiff's account. About the time this note came due plaintiff was advised by the bank's president that Sifers desired to renew the note, and accordingly on September 11, 1922, Sifers executed a new note due in six months for $12,000 payable to the Commercial National Bank, which the bank by its president indorsed, without recourse, and delivered to plaintiff. About fifteen days before this note came due, and on February 23, 1923, plaintiff took the note to the bank and took a receipt for it. He was not credited with the amount of the note when due and took the matter up with the then president of the bank, Mr. Suter, who denied liability. After a discussion it appears to have been agreed between the parties that without waiving their respective rights they would endeavor to get security for the note from Mr. Sifers, and an agreement in writing to that effect was entered into between plaintiff and the bank by its president, A. H. Suter, on April 18, 1923. They took the matter up with Mr. Sifers to secure the payment of the note. He and his wife executed a deed to their residence property in which they were living in Hutchinson to secure payment of the note. The time for the payment of the note was extended twelve months and the deed placed in the bank in escrow.

In this action plaintiff sought to recover a personal judgment against J. S. Sifers on the note and to foreclose the mortgage deed given to secure its payment, and also sought to hold the bank liable on its repurchase agreement. Originally the American National Bank was made a party defendant, on the theory that it assumed the obligations of the Commercial National Bank, but later the action was dismissed as to the American National Bank. On the trial of the issues between plaintiff and the defendants, J. S. Sifers and wife, there was a judgment for the full amount of the note and a decree for the foreclosure of the deed as a mortgage.

The original answer filed by the Commercial National Bank and its liquidating agent in this case contains, among other things, the following:

"Defendant admits that there was sold to plaintiff by said Commercial

National Bank, one note for the sum of $12,000, made payable to said Commercial National Bank, and signed by J. S. Sifers."

But it was alleged the note was indorsed without recourse.

In the trial of the case, and after the testimony of Mr. Suter to the effect that the note above mentioned did not show on the discount record of the bank, defendants, by leave of court, amended their answer in this respect so as to read as follows:

"Defendants say that in their original answer, they admitted that there was sold by the said Commercial National Bank to plaintiff one note for the sum of $12,000, made payable to the Commercial National Bank, and signed by J. S. Sifers, but said defendants were mistaken as to the facts; that since a thorough investigation of the books of said bank, defendants now allege that said $12,000 note was never in said bank and never was the property of said bank, but that said $12,000 note was negotiated to plaintiff by A. E. Asher in the name of the Commercial National Bank, without the authority of said bank, and that the said A. E. Asher indorsed the name of the Commercial National Bank upon said note 'without recourse.'"

In rendering judgment for plaintiff as against the bank and its liquidating agent the trial court did not make specific findings of fact, but did file a memorandum opinion in which there is a general discussion of various features of the case and which contains, in effect, a finding that the $12,000 J. S. Sifers note sold to plaintiff had not been shown on the note record or discount record of the bank as being the property of the bank. And further, that while the check of $11,580 given by plaintiff to the bank in payment of the note was charged to plaintiff's account on the books of the bank there did not appear on the books of the bank a corresponding credit, from which the court reasoned that the records showed that the bank did not receive the money.

Turning now to the legal points presented. Appellants had demurred to plaintiff's petition on the ground, among others, that several causes of action were improperly joined. This was overruled. Appellants complain of that ruling and argue that plaintiff's cause of action against Sifers and wife on the note and to foreclose the mortgage deed is separate and distinct from his cause of action against the bank and its liquidating agent on the bank's repurchase agreement. But this is an equitable action to foreclose a mortgage, and it is proper under R. S. 60-601 to join as defendants all parties who might have any interest in or lien upon the property, or the funds to be derived from its sale. Even had the court thought the

demurrer good and sustained it, it should have permitted the filing of separate petitions under R. S. 60-709, in order that the parties might have as nearly as could be separate trials on their respective issues. But the defendant bank and its liquidating agent in this case have had a separate trial on the issues relating to them as nearly as could have been possible had plaintiff been permitted or required to file separate petitions. Hence there can be no error in this ruling.

Appellants argue that the bank never owned the Sifers note; that it did not appear on the records of the bank as having been owned at any time; that it bore no number such as the bank placed on its notes. Passing the fact that defendants originally pleaded that the bank owned the note and sold it to plaintiff, these things stand out rather forcefully. It was payable to the bank and in the possession of its president and active managing officer, who sold it to the plaintiff and took payment in the name of the bank, and in this very action, by the judgment in favor of plaintiff and against the maker of the note, it was necessarily determined that the note had been given originally for a valid consideration.

Appellants argue that the bank did not receive the benefit of the payment from plaintiff for this note. The check made by plaintiff for such payment was made payable to the bank, was delivered to its president and active manager, and was charged to his account on the books of the bank. In this situation we think that the bank cannot be heard to say that it did not receive the money. The fact that someone looking at the books a year or two later was not able to find a corresponding credit for it is not sufficient to overthrow the other evidence of payment having been received by the bank.

Appellants argue that it was not shown that the directors of the bank had authorized its president to make a repurchase agreement with plaintiff. There was evidence tending to show that the board of directors did authorize it, and that similar agreements extending over several years, of which there were records in the bank, must have been known to and authorized or acquiesced in by the directors; but passing that, we do not regard such action essential. It is one of the functions of banks to buy and sell negotiable paper (U. S. R. S. § 5136, ¶ 7), and its chief managing officer, either president or cashier, has authority from the nature of his position to transact such business.

We had occasion to consider that question in *McDaniel v. Altoona State Bank*, 126 Kan. 719, 271 Pac. 394, where it was held:

"The president and cashier of a bank, being its active managing officers in the conduct of the business of the bank, have authority to sell and transfer notes and to guarantee their ultimate payment."

Naturally, if they have authority to sell the notes of the bank, they can sell them upon such terms as may be agreed upon, whether that be a guarantee of ultimate payment or agreement to repurchase before maturity, so long as such terms are not illegal or against public policy. (See, also, *Rankin v. City National Bank*, 208 U. S. 541; *Auten v. United States National Bank*, 174 U. S. 125.) The court below based its judgment for plaintiff on the apparent authority of the president, under the facts here shown, to bind the bank by the agreement he made with plaintiff. While that holding is correct, we think the president had not only apparent but actual authority so to bind the bank.

Appellants point out that the note in this case was indorsed without recourse. So were the notes in question in the McDaniel case, *supra*. Plaintiff did not sue on the contract of indorsement, but is suing on the repurchase agreement, in view of which the indorsement had the effect only of transferring title to the note pending the repurchase.

Appellants contend that there was no consideration for the agreement to repurchase. The sale itself was a sufficient consideration. It is argued that the repurchase agreement is general in its terms and does not apply to this specific note, but it is clearly broad enough to cover it, and was obviously intended to do so.

The judgment of the court below is affirmed.