No. 29,559.

FRANK R. DIVER, *Appellee*, v. THE FOURTH NATIONAL BANK IN WICHITA et al., *Appellants*.

(294 Pac. 924.)

Opinion filed January 10, 1931.

*Charles G. Yankey, V. Harris, M. P. Shearer, John L. Gleason, Kenneth K. Cox* and *Morris H. Cundiff*, all of Wichita, for the appellants.

*Thomas C. Wilson, Henry Lampl, Dempster O. Potts, James A. Conly, Dallas Potts* and *Rupert Teall*, all of Wichita, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action to set aside a will purporting to dispose of the property of M. R. Diver, and the probate of the same, and also to set aside certain deeds purporting to convey property of the deceased, all of the alleged value of approximately $300,000. Diver, being about 89 years old, died on February 16, 1929, leaving no widow or children, except Frank R. Diver, a grandson and the sole heir at law of the deceased. The property conveyed by deeds at the same time the will was executed was con-

veyed back to the estate of M. R. Diver after his death, and it is no longer in controversy. The principal question tried out was whether Diver had testamentary capacity to make the will. At the time it was executed and for a long time prior thereto he was feeble-minded, suffering from senile dementia, and did not comprehend the contents of the will or legal effect of the disposition he was making of his property. The will was admitted to probate on the 23d of February, 1929, and the Fourth National Bank in Wichita was appointed executor of the will. At the conclusion of the testimony the court found that Diver did not have mental capacity to understand the terms, provisions and conditions of the will in question and rendered judgment in favor of the plaintiff and against the defendants. The defendants appeal.

A great amount of evidence on the subject as to the testamentary capacity of Diver was produced and is presented here in an abstract which covers 234 pages, with a counter abstract of 30 pages. Previously there had been a proceeding in which M. R. Diver had been adjudged to be feeble-minded, and still another action in which a marriage between Diver and Ida Wilhite had been annulled because of incompetency of Diver to enter into a marriage contract. The latter action was brought here for a review and the judgment holding the marriage to be void was affirmed. (*Fourth National Bank v. Diver*, 131 Kan. 113, 289 Pac. 446.) In order to expedite the trial of this action the parties stipulated that the evidence given by certain witnesses in the earlier Diver cases should be received in the present case as though the evidence had been taken by deposition, subject only to general objections for incompetency, immateriality and irrelevancy. Upon all the evidence the court made extended findings of fact, only an abridgment of which need be stated. After finding that the only child born to M. R. Diver, deceased, was Joe Diver, now also deceased, and that Frank R. Diver, the plaintiff, was a son of Joe Diver, and the sole and only heir of M. R. Diver, the court proceeded to find, among other things, that on December 19, 1928, M. R. Diver had been found by the probate court to be a feeble-minded person and incapable of managing his affairs, that a guardian should be appointed for his person and estate, and that such an appointment was made. Upon an appeal taken from that adjudication to the district court, that decision was approved and affirmed. That the will in question

was executed on May 29, 1926, when Diver was about 86 years old, that he had accumulated about $248,000; that in 1918 he had suffered a stroke of paralysis when he was about 78 years of age, and that later he had suffered other paralytic strokes and was confined in hospitals and his bed part of the time; that he had delusions in 1922 and grew worse until his death on February 16, 1929; that as early as 1920 he had failed to recognize some of his best and oldest friends and after conversing with them would inquire who they were; that he had a delusion that an iron safe which he had contained bonds, money, diamonds and jewelry of his wife to the value of from $30,000 to $50,000, and had built a cement block building for the safe with stationary windows and a door so narrow that the safe could not be moved out of the building, and had employed two men to sleep in the room with the safe to guard it and prevent anyone from stealing the valuable contents, and that these men continued to guard the safe until Diver's death; that while the safe was in the building Diver knocked the dial of the safe off so that it could not be opened by anyone, and when the safe was opened after his death it was found to contain nothing of value. The court found that he lost all sense of locality and direction and would have to be helped to get to his home; that in 1926 he insisted on buying horses and mules at a price much in excess of their real value; that in the three years prior to his death he imagined at times he had lost all of his property and would borrow street-car fare from persons, and at other times he had an exaggerated idea of his wealth; that he went to an office and inquired for a friend he had known many years, and was one who had been dead for a number of years; that in 1926 he imagined he had made a will, and he told his friends that he had deeded away all of his property, and again that he had put the Salvation Army in his will; that in going out to his farm he did not know his destination and had to be helped off of a bus near the farm, and would then go in the wrong direction; that he could not locate his property and had lost all ability to compare values. That in 1924 he was called as a juror and did not realize that witnesses had testified in the case, did not know that any evidence had been introduced, that he insisted upon talking about horses, and that his conversations were all disconnected. It was found that in 1926, and for some time before that, his mentality, by reason of the atrophied condition of his brain, was such that he was unable

to recognize relatives and friends he had known for years, could not remember where they lived or where he himself lived, and could not recognize public buildings with which he had been familiar, and in going about would become lost and unable to find his property; that he would pollute his clothing in public places in the presence of ladies; that he lacked all sense of responsibility and did not comprehend his acts with reason, memory or judgment and did not have intelligent consciousness of what he was doing when he signed the will. The court stated the names of the beneficiaries named in the will, and that some of them testified for the plaintiff and against the defendant as to the mental condition of Diver, and that one of them, not related to Diver or his deceased wife, was given as large a share as was given to the plaintiff's grandson. It was further found that in December, 1928, Diver, then about 89 years of age, was suffering from *paralysis agitans* and senile dementia; that the average age of his mind was from six to nine years; that he had a general hardening of the arteries and of the blood vessels in the brain, suffering from arteriosclerosis, and this condition had brought on atrophy of the brain cells, was disorientated, did not know the day of the week or month and had delusions; that he had been suffering from paralysis and senile dementia for a number of years, was very frail and could not walk without assistance, and at that time his mental capacity was practically nil. He died of hypostatic pneumonia, of two or three days' duration, on February 16, 1929, and an autopsy revealed that he had been suffering from a pronounced general arteriosclerotic condition for a period of ten to twenty years prior to his death. After the frank symptoms of senile dementia appeared he was unable to correlate the activities of his mind, or to correlate his will, judgment and understanding, and unable to receive proper and correct evidence of his surroundings. That he had no remissions or lucid intervals from May, 1926, and for a period of two years or more prior to that date, up to and including the date of his death; that at the time of the execution of the will and as the result of his arteriosclerotic condition he did not have the mental capacity to know the value and extent of his property or the present relation and relationship to him of persons that might be or would be the natural objects of his bounty, nor did he possess an intelligent understanding of the disposition he desired to make of his property. The court added a finding that no undue influence

was exercised by any of the defendants upon M. R. Diver in the preparation or execution of the will signed on May 29, 1926.

As a conclusion of law the court found that the will was without validity, should be set aside and Diver should be adjudged and decreed to have died intestate. Further, that Frank R. Diver is the sole and only heir at law of the estate of M. R. Diver. Judgment was accordingly given.

The defendants raised the question of the sufficiency of the evidence to sustain the findings of testamentary incapacity by demurrer to plaintiff's evidence, by motions to set aside certain findings on the ground that they were without support in the evidence and in overruling the defendants' motion for a new trial. A reading of the vast volume of evidence pertaining to the mental condition of M. R. Diver prior to and when the will was signed satisfies us that it abundantly supports the findings of the trial court that Diver did not have testamentary capacity to execute a will.

There was some conflict in the evidence, in that witnesses stated circumstances tending to show that he had capacity to understand what he was doing, the ownership and identity of his property and the disposition he desired to make of it, but the findings of the trial court, supported as they are by substantial evidence, settle such conflict as exists and are conclusive on this appeal. This court, as often stated, is not a fact-finding tribunal on an appeal, and we cannot weigh conflicting testimony of witnesses upon the subject involved. That was the function of the trial court, and this court has the function of determining whether the findings made upon the disputed and all other evidence support the conclusions of the trial court. This rule has been so frequently declared that the citation of authorities is unnecessary. It is not practical to set forth the great volume of testimony in support of and against the conclusion of the trial court on the subject, and we only need to say that there is in the record sufficient evidence of a substantial kind to sustain the findings and judgment of the trial court.

Error is assigned on the refusal of the court to make requested findings on testimony given on behalf of defendants as to circumstances and transactions occurring prior to and at the time of signing the will. The findings requested embrace many items of testimony rather than ultimate facts. As already shown, the court did make findings on the ultimate facts of the case and, indeed, went further than it was required to go in that respect. The case of

*Nordman v. Johnson*, 94 Kan. 409, 146 Pac. 1125, is cited and greatly relied on as an authority that additional findings should have been made. There this court was in agreement on the rule that only ultimate facts were required, but it divided upon the application of the rule to the issues in the case. In the dissenting opinion Justice Burch discussed at length the purpose of the rule and collected and cited many authorities showing that the courts are united in holding that only ultimate facts are to be found, and that the court is not required to find mere evidentiary facts upon which the ultimate facts are based, stating in effect that requests which constituted a cross-examination of the court upon the evidence, and calling for findings on purely evidentiary and probative facts, which the plaintiff desired to use to combat the conclusions of facts stated by the court, to the effect that the testator was of sound mind and free from restraint, could not be required, and further stating that: "The universal rule that not everything essential to the pleading put in issue and covered by the evidence, should be stated in findings of fact, but that ultimate facts only shall be so stated, may be illustrated by cases," which were cited.

In *Alexa v. Alexa*, 108 Kan. 38, 193 Pac. 1083, the Nordman case was referred to, and it was said:

"That case, including Mr. Justice Burch's dissenting opinion, is an instructive discussion on the trial court's duty to make special findings of fact at the request of a litigant. While disagreeing in the application of the rule itself, the majority and minority opinions agreed that the special findings required by the code are those which deal with the ultimate facts upon which the rights of the parties directly depend and from which the correctness of the judgment can obviously and readily be ascertained, not the merely evidentiary facts upon which the ultimate facts in issue are to be established." (p. 46.)

The requested findings in this case were not only outside of the ultimate facts, but were inconsistent with the ultimate facts which the court found. Within the rule applicable we think no error was committed in the refusal to make the requested findings.

The refusal of the motion to set aside certain findings made, on the ground that they were unsupported by the evidence, cannot be regarded as error.

There is another contention that plaintiff, as illegitimate son of Joe Diver, was not duly recognized by his father as his son and hence the son had no right to bring this action. The court found that Joe was the only child born to M. R. Diver, that the only child

born to Joe was the plaintiff, Frank, and that neither M. R. Diver nor his son, Joe, ever had adopted any children. Frank was the son of Alice Gallagher and Joe, and his parents were married on February 3, 1888. There is testimony that Joe not only openly acknowledged and treated Frank as a son, both in oral statements and in letters, but he appeared to be proud of the relationship and boasted that Frank was a "chip off the old block." No testimony was offered of any denial by Joe that Frank was his son, nor was any attempt made to controvert the testimony offered by plaintiff on the question. The only contention is that a general and notorious recognition was not shown. On account of the time intervening between the infancy of Frank and the time of the trial, about forty years, it was not easy to produce testimony as to the recognition by the general public, but it was not necessary that it should have become known to all living in the community or even a majority of them. If the father freely admitted the relationship when there was occasion for him to speak of it, and no attempt to conceal the fact, it will ordinarily be sufficient. (*Smith v. Smith*, 105 Kan. 294, 182 Pac. 438.) The testimony produced is deemed sufficient to establish open and due recognition by Joe that he was the father of Frank.

Objections are made to the reception of testimony of medical experts, some of it in answer to hypothetical questions. An examination of the questions discloses that they were based on evidence and were fairly presented to the witness, and we discover no error in the rulings on these questions nor anything material in other objections to the admission of evidence.

Finding no material error in the record, the judgment of the trial court is affirmed.