### No. 30,287.

MAUREA SOLOMON, *Appellant*, v. BEN LAMPL, as Administrator of the Estate of M. R. Diver, Deceased, FRANK R. DIVER et al., *Appellees*.

(11 P. 2d 1028.)

Opinion filed June 4, 1932.

*T. A. Sullivan,* of Wichita, *T. J. McCaffrey, T. E. Scanland, Fred L. Hoyt* and *Roger Stephens,* all of Oklahoma City, Okla., for the appellant.

*Henry Lampl, Demster O. Potts, J. A. Conly, Rupert Teall* and *Dallas Potts,* all of Wichita, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This action originated as a suit to set aside the will of the late M. R. Diver, of Wichita, on the ground of want of testamentary capacity and undue influence. Among the original defendants were the Fourth National Bank in Wichita, executor of the will, and Frank R. Diver, one of the legatees under the will.

Plaintiff alleged that she was an heir of M. R. Diver; that he died seized of real and personal property in Kansas, California, Arkansas and Oklahoma, of the value of $300,000; that certain persons had procured deeds to certain of M. R. Diver's real estate through undue influence. Plaintiff also pleaded the facts of the litigation brought by Frank R. Diver to set aside the will of M. R. Diver as far as it had then progressed, and alleged that he claimed to be an heir at law of M. R. Diver. The prayer of plaintiff's petition read:

"Wherefore, plaintiff prays that the alleged and purported will of said M. R. Diver, deceased, hereinbefore referred to as Exhibit A, be canceled, set aside and held for naught, and that the probate of said purported will be canceled,

set aside and held for naught; that the defendants the Fourth National Bank in Wichita be required to execute such deeds of conveyance to the lands acquired by them belonging to the estate of M. R. Diver, deceased, to such persons as may to the court seem proper, and that the plaintiff have such further, other or different relief to which she may in law or equity be in good conscience entitled."

Defendant Frank R. Diver filed an answer and cross petition in which he admitted the infirmities in the will, and alleged that it had been set aside and held for naught in an action which he as plaintiff had prosecuted to final judgment in the district court of Sedgwick county, Kansas. But in his cross petition he alleged that he was the owner of the legal and equitable estate in certain described lands and lots in Wichita; also in Sumner county, Kansas; Crawford county, Arkansas; Oklahoma county, Oklahoma; and in the city of Los Angeles, California, described in plaintiff's petition, and that he was entitled to the quiet and exclusive possession of every part thereof. He also alleged that plaintiff claimed some right, title or interest in the described lands and lots, the exact nature of which he did not know, but that any and all of plaintiff's claims thereto had no basis in law or in fact, and that they were asserted by plaintiff for the sole purpose of harassing defendant and clouding his title to the aforesaid properties. He prayed that his title be quieted and for an adjudication that plaintiff had no title or interest therein and for other proper relief in equity.

After this lawsuit was begun, the litigation growing out of an abortive marriage between M. R. Diver and Ida A. Wilhite (*Fourth Nat'l Bank v. Diver*, 131 Kan. 113, 289 Pac. 446) was concluded; likewise the litigation brought by Frank R. Diver to set aside the will of M. R. Diver (*Diver v. Fourth National Bank*, 132 Kan. 36, 294 Pac. 924). Thereupon Ben Lampl, as administrator of the estate of M. R. Diver, was substituted as defendant in this action for the Fourth National Bank in Wichita, as executor and trustee. The administrator filed an answer and cross petition in which he made substantially the same allegations as those pleaded by the defendant, Frank R. Diver, and prayed for relief consistent therewith.

Plaintiff filed motions to strike the cross petitions of the administrator and of Frank R. Diver on the ground that they were not proper set-offs to plaintiff's action, nor new matter in defense thereto, nor germane to the subject matter of plaintiff's action, and that they were unauthorized by the code of civil procedure. These

motions were overruled, and plaintiff then filed separate answers to the cross petitions denying their allegations, challenging the court's jurisdiction to entertain the causes of action alleged therein, and denying that Frank R. Diver was an heir at law of M. R. Diver. Plaintiff also alleged that she was the natural daughter of Joe Diver, deceased, only son of M. R. Diver, and that she had been recognized by Joe Diver as his daughter and that such recognition was general and notorious, and that she was the sole and only heir of M. R. Diver, and that—

"As such heir is entitled to take all of the property, real, personal or mixed, of which the said M. R. Diver died seized or possessed."

Before the case was called for trial plaintiff dismissed her petition as against all the defendants except Ben Lampl, as administrator, and on the day of the trial she dismissed her petition against him. The cause then proceeded to trial on the issues raised by the cross petitions and plaintiff's answers thereto. In his opening statement for plaintiff, her counsel said:

"The issues as framed here present, as I think, nothing more than a suit to determine adverse claims or quiet title suit as it is sometimes spoken of and we have contested by our answer and we do contest both the heirship of Frank Diver and assert our own heirship. That is the issue as I understand it."

Evidence at length was then adduced in behalf of the cross petitioners. The mother of Frank R. Diver testified that he was the son of Joe Diver, only son and heir of M. R. Diver; that she and Joe were married when their son was about four years old and took up their abode in Wichita; that Joe openly acknowledged Frank as his son. Although she separated from Joe when Frank was about twelve years old, and has lived apart from him for twenty-five years, she was able to produce a considerable number of Joe's letters to her in which he referred to Frank in terms of paternal endearment. Several other witnesses testified that Joe openly, uniformly and frequently spoke of Frank as his son, that he exercised paternal control over him, and frequently expressed pride in the lad. Joe's wife (mother of Frank) left him after having lived with him for about eight years, but that did not alter Joe's interest in Frank. After that separation, on a certain occasion it was reported to Joe that Frank, then about twelve years old, was in a Wichita saloon. Joe brought him out and spanked him, saying: "I guess I will do the drinking for the Diver family." M. R. Diver himself, whose intestate estate is the prize which plaintiff in this action sought to

obtain, was apparently of the same rough, unconventional character as his son. On one occasion when his wife chided him for paying a fine for Joe he said with emphasis needless to repeat:

"Joe is my only child and Joe's child is my only grandchild and . . . I will spend money on them as long as I have it."

Joe followed the business of a hack driver in Wichita, and he was accustomed to carry Frank with him about town. His paternal interest in the lad did not cease until Frank was seventeen years old, by which time Joe's health had greatly declined. At that final meeting he gave his son $2. A few months later, on March 25, 1902, Joe died in Hot Springs, Ark.

It is needless to rehearse at greater length the evidence showing the relationship of Frank Diver to Joe Diver and that Joe Diver openly and notoriously acknowledged him as his son, not only by words but by a life-long course of conduct as consistent as could be expected of a person of Joe's wayward and irregular habits.

The plaintiff sought to establish her pedigree as the illegitimate daughter of Joe Diver and to prove that he had openly and notoriously acknowledged her as such. The evidence to that effect was meager and unconvincing. Plaintiff was the daughter of one Jennie Evans, and was born in a Wichita hotel in February, 1897. Having this baby for her cradle but no husband for her bed, Jennie named it Marie Evans, and when it was two weeks old she gave it to a childless couple in Wichita, J. T. Holmes and his wife, to rear as their own. When the child was four months old, Jennie and Mr. and Mrs. Holmes appeared before the probate court of Sedgwick county and proceedings for the formal adoption of the baby were consummated. Thereafter plaintiff was reared in the family of Mr. and Mrs. Holmes as their daughter and so remained until her marriage. Mrs. Holmes testified:

"After I adopted this baby, I lived in Wichita from 1897 until the fall of 1900; and from there I went to Granite, Okla., taking this child with me; and she has remained with me from that time on until she grew into womanhood. And during that time Joe Diver never made any inquiry concerning this child; or contributed anything to its support. Joe Diver did not during any of that time come to see this child; nor did I ever receive any letter from him concerning it, or concerning anything else. She has lived with me from the time she was two and a half weeks old until she was married. She was married when she was seventeen years old."

The principal bit of evidence to prove that plaintiff was the daughter of Joe Diver was given by a Mrs. Sarver, who testified that she

was a girl of fifteen years when plaintiff was born in the Occidental hotel in Wichita. Joe Diver came into the hotel and said to witness:

"I am a daddy; I've got a girl."

*"Cross-examination:*

"Q. What day of the month was it that you say he made that statement, 'I am a daddy'? A. I could not tell you the month.

"Q. Couldn't even tell the month? A. It was in February.

"Q. What part of February? A. I could not tell you.

"Q. But you do tell the court that you remembered a thing that happened when you were fifteen years old, some thirty-four years ago? A. Yes."

To overcome that testimony defendants called one Jones, who had been a constable, deputy policeman, and city fireman, and who was intimately acquainted with Joe Diver for many years. He testified that when plaintiff was born, he had twitted Joe about the baby and its mother, insinuating that he was the baby's father. Joe hurled at the witness a stream of profanity, adding—

"You were at the Santa Fe depot when I met that woman and took her from there to the Occidental hotel. You know —— well, it isn't my baby. . . . You know —— well, that I am not the father; that it isn't my kid . . . the father of that child is a Jew. I don't look like a —— Jew, do I?"

Again we must say that as this court has nothing to do with determining the preponderance of evidence it would serve no purpose to reproduce it at great length.

The trial court made findings of fact in favor of defendants—that Frank R. Diver was the only child of Joseph R. Diver, deceased; that Joseph had recognized Frank R. Diver as his son; that such recognition was general and notorious and in writing; that Joseph R. Diver was the son and only child of M. R. Diver, deceased; that neither M. R. Diver nor Joseph R. Diver left surviving them or either of them any widow or other heirs except Frank R. Diver, defendant herein; and that Frank R. Diver was entitled to inherit the M. R. Diver properties (described in detail) in Wichita, in Sumner county and Wallace county, in Crawford county, Arkansas, in Oklahoma county, Oklahoma, and in Los Angeles, California. The court also found that plaintiff, Maurea Solomon, was not a child of Joseph R. Diver, and was never recognized by him as his child; that there never was a general and notorious recognition of her as his child; that plaintiff was not entitled to inherit any of the property of M. R. Diver, deceased, and that she had no right or interest therein; that the title to all of the real estate situated in Kansas which had been owned by M. R. Diver at the time of his death

should be quieted in Frank R. Diver and against plaintiff; and that Frank R. Diver should be adjudged to have the sole ownership of the Kansas real estate and all and entire the assets, real, personal and mixed, of the M. R. Diver estate, wherever situated, and that plaintiff should be barred and enjoined from asserting any interest therein.

Judgment was entered accordingly, and plaintiff appeals, urging certain errors which will be noticed in the order of their presentation.

It is first contended that the trial court committed error in not striking the cross petitions of the administrator and Frank R. Diver. The argument is made that the sole purpose of plaintiff's petition was to obtain an adjudication that the will of M. R. Diver was a nullity, and that the matter alleged in the cross petitions was not germane thereto. That contention is not tenable. Plaintiff brought defendant Frank R. Diver into court. By reference and otherwise she pleaded the fact that Frank R. Diver had brought suit to set aside the will of M. R. Diver. In the prayer of her petition she asked that certain defendants who had acquired deeds from M. R. Diver be required to convey the properties covered by those deeds "to such persons as may to the court seem proper." This necessitated an adjudication as to whom those properties should be conveyed. Plaintiff also sought such further relief as she might be entitled to in law, equity and good conscience. In law, equity and good conscience, under our elastic code of civil procedure the defendant Frank R. Diver was entitled to traverse the allegations of plaintiff's petition and to seek relief as broad and all-inclusive as she. So, too, was the administrator, who was properly brought into the litigation. There was nothing in the issues as first joined which would confuse the plaintiff in the maintenance of her action to justify a severance. If there had been, a severance might have been obtained, and the cross actions of Frank R. Diver and the administrator could have been separately docketed and separately tried. (*Campbell v. Durant,* 110 Kan. 30, 35, 202 Pac. 841, and syl. ¶ 5; *Sentney v. Commercial Nat'l Bank,* 128 Kan. 107, 110, 111, 275 Pac. 1081; *Scott v. Devine,* 129 Kan. 808, 811, 284 Pac. 594; 1 Bancroft's Code Practice and Remedies, 613.)

Counsel for appellant direct our attention to some provisions of the code which in their opinion do not sanction the trial court's ruling on the motion to strike nor the procedure we have just suggested. A motion to strike for misjoinder is equivalent to a demurrer, and as to it our code says:

"When a demurrer is sustained on the ground of misjoinder of several causes of action, the court on motion of the plaintiff shall allow him, with or without costs, in its discretion to file several petitions, each including such of said causes of action as might have been joined; and an action shall be docketed for each of said petitions, and the same shall be proceeded in without further service." (R. S. 60-709.)

As it turned out, the plaintiff first abandoned part of her action and eventually the whole of it, which was her privilege, but that did not require the principal defendant and the administrator to submit to having their cross petitions stricken and to commence their cross actions anew. We are well aware that in some other jurisdictions procedure and practice still cling more or less to the age when the mechanics of procedure were regarded as of more concern than the aims and ends of justice—which procedure was designed to achieve. In this jurisdiction we make no fetish of procedure. Under the genius of our code it is only a means to an end—to give every litigant a fair chance to present his cause and make his defense so that justice may speedily and economically be administered. Applying that judicial slant to the trial court's ruling on the motion to strike the cross petitions from the files, where does it appear that plaintiff did not have a fair chance to present her cause because of the cross petitions? Nowhere. She abandoned or sought to abandon the litigation altogether. The will of M. R. Diver was set aside without her help and at no expense to her. If defendants' cross petitions had been stricken and refiled as separate actions, or if a severance had been granted and the cross petitions separately docketed, it is not conceivable how such a maneuver could have helped her. She had laid claim to an interest in the Diver estate, and the cross petitioners were entitled to have an adjudication on that claim.

The practice followed in the case at bar has long been recognized as proper in this jurisdiction. In *Venable v. Dutch,* 37 Kan. 515, 15 Pac. 520; 1 Am. St. Rep. 260, plaintiff brought an action in ejectment; defendant filed a general denial, pleaded possession, set up a tax deed, and prayed that his title be quieted. Plaintiff moved to strike that part of defendant's answer which set up title under the tax deed. This motion was overruled, likewise plaintiff's demurrer thereto. Plaintiff then dismissed his action without prejudice, but the court permitted the cause to stand on the allegations of defendant's answer. It proceeded to judgment in favor of defendant, and plaintiff appealed, making substantially the same contention as that

urged by counsel for appellant in the case at bar—that the answer was not a counterclaim. (R. S. 60-709 was not then enacted.) This court held otherwise, citing that part of section 95 of the code of 1868 (R. S. 60-711) which extends the meaning of a counterclaim to include a claim "connected with the subject of the action." Part of the syllabus reads:

"In such an action [in ejectment] when the plaintiff dismisses his cause of action the defendant has the right to proceed to the trial of his claim for the purpose of determining his interest in the land as against the plaintiff. He then assumes all the burdens of a plaintiff, and is entitled to his rights so far as amending his pleadings is concerned." (Syl. ¶ 2.)

Other cases illustrating and elaborating the same rule are: *Thrashing-Machine Co. v. Currey,* 75 Kan. 365, 89 Pac. 688; *Wilkinson v. Mears,* 77 Kan. 273, 94 Pac. 136; *Lawson v. Rush,* 80 Kan. 262, 101 Pac. 1009; *Blair v. Craddock,* 87 Kan. 102, 105, 123 Pac. 862; *Miller v. Thayer,* 96 Kan. 278, 282, 150 Pac. 537; *Dalsing v. Leib,* 116 Kan. 44, 46, 47, 225 Pac. 1074; *Hendrix v. Wyandotte County Commissioners,* 121 Kan. 85, 245 Pac. 1052. See, also, *San Antonio Suburban Farms v. Shandy,* 29 F. 2d 579, where Judge McDermott, then federal district judge, discussed the elastic character of a cross petition under the Kansas code. The error predicated on the trial court's ruling on plaintiff's motion to strike the cross petitions is not sustained.

It is next contended that the trial court erred in admitting in evidence a certified copy of the journal entry of judgment in the case of *Diver v. Fourth National Bank,* which was the action where Frank R. Diver obtained judgment (affirmed in this court, 132 Kan. 36, 294 Pac. 924) setting aside his grandfather's will. Plaintiff makes the point that she was not bound by that judgment. Granted. Nevertheless Frank R. Diver had a right to show the basis of his title to the properties which were the subject matter of the cross action. Even plaintiff's own counsel, in his opening statement, said that the issues as framed presented a suit to determine adverse claims or to quiet title. It was necessary and proper for Frank R. Diver to show his title step by step, and one proper step was to show that he had vindicated his claim of heirship to the Diver estate in another action in which that claim was properly drawn in question. That judgment was some evidence of his title, not conclusive against plaintiff, of course, but certainly admissible. In 34 C. J. 1052, 1053, 1054, it is said:

"Although a judgment is not admissible against strangers to prove the facts on which it is based, it is admissible against them to prove the fact and time of its rendition, and the legal consequences resulting therefrom. . . .

"Although a party cannot prove the ultimate facts on which his title depends by a judgment rendered in an action to which his present opponent was not a party, or in cases where the latter does not claim under parties to the former action, yet a judgment is admissible, even against a stranger, where it is offered as a link in a chain of title, or as a muniment of title. . . . It will serve only to aid or supply the particular link which without the decree would be defective or absent."

Moreover, plaintiff's original pleading brought into this case the fact of Frank R. Diver's lawsuit to set aside the will of M. R. Diver, and it was perfectly proper for Frank to show how that litigation terminated. Plaintiff does not now show in what possible respect she was prejudiced by the introduction of judgment in that action. The judgment in this case is in no sense dependent on the evidentiary matter contained in that judgment, and were it wholly inadmissible it would not avail to disturb the judgment presently under review. (*Giacomini v. Giacomini*, 128 Kan. 699, 280 Pac. 916, syl. ¶ 3; *Huycke v. Kramer*, 133 Kan. 41, 298 Pac. 787, syl. ¶ 6.)

The next contention is that the decision was contrary to the evidence. We have briefly outlined above a small part of the evidence touching Frank R. Diver's relationship to Joe Diver and Joe's open and notorious acknowledgment of Frank as his son. We have also touched briefly part of the evidence touching plaintiff's claim of relationship to Joe Diver. This court has nothing to do with the evidence further than to decide whether the trial court's findings of fact, general or special, are supported by substantial and competent evidence. We have read the record with painstaking care, and have no hesitation in holding that the trial court's finding in favor of Frank R. Diver was supported by evidence, and that feature of this appeal is foreclosed by precedents without number. In *State, ex rel., v. Telephone Co.*, 115 Kan. 236, 269, 223 Pac. 771, Mr. Justice Marshall estimated that this court had decided "probably five hundred times" that where a finding of fact by jury, referee or trial court had the support of competent though disputed testimony this court would not disturb it. In *Pittman Co. v. Hayes*, 98 Kan. 273, 277, 157 Pac. 1193, the court pointed out how impossible it is for this court to weigh evidence which it must gather from the printed page, and how irregular it would be to substitute our judgment as to the ultimate facts for that of the trial court which gathers its facts from the lips of living witnesses.

"And thus it is that month by month and year by year, in this court and in other courts of appeal, the elementary rule has to be restated that the decision of the trial court on matters of fact based upon substantial though conflicting testimony cannot be disturbed." (p. 277.)

See, also, *Agricultural Ins. Co. v. Ætna Ins. Co.*, 119 Kan. 452, 457-459, 239 Pac. 974, and citations; *Stanley v. Stanley*, 131 Kan. 71, 239 Pac. 406, syl. ¶ 2, and citations; *City of Fort Scott v. Brown*, 133 Kan. 401, 300 Pac. 1093.

It is next urged that error was committed in overruling plaintiff's amended and supplemental motion for a new trial. In support of this motion plaintiff produced certain affidavits, one of which was by a witness who deposed that plaintiff's mother, Jennie Evans, lived with Joe Diver as his wife in the summer of 1897, and that there was an infant child in their home that Joe carried about the house and seemed very fond of. This witness also deposed that Joe talked to her about the baby having been given in adoption, but that he and Jennie intended to get the baby back as soon as Jennie had better health. Another witness deposed that in 1896, when Jennie Evans was pregnant, he had seen her and Joe Diver coming into a restaurant to eat, and that Joe and Jennie lived together in Wichita after the baby (plaintiff) was born, that he had seen Joe and Jennie with a small child "which was a few months old." This witness also deposed that in 1897, shortly after a baby had been born to Jennie Evans, Joe invited the witness and six or seven friends to drink with him, saying the drinks were on him and his baby girl. There were other affidavits of the same general tenor, and which to some extent amplified the unimportant fact adduced at the trial touching the irregular connection between Joe Diver and Jennie Evans which sprang up after plaintiff was given in adoption to Mr. and Mrs. Holmes. A reperusal of the testimony of Mrs. Holmes, plaintiff's adoptive mother, set out above, will show that if credence was given to her testimony the facts narrated in these affidavits were necessarily disbelieved. That was apparently the trial court's conclusion when in overruling the motion for a new trial the court said:

"Regardless of the newly discovered feature of the evidence, the court, I think, should take into consideration the plausibility of it, and taking all these matters into consideration, I do not believe that a new trial would result in any different judgment, even if the testimony as generally outlined in the affidavits were produced."

This court has often said that it has no means of constraining a trial court to give credence to evidence whose truth does not commend itself to its judgment, and we discern nothing about the belated evidence in support of a new trial to justify the invention of such a specific in the case at bar. Moreover, the showing of diligence to produce this newly discovered evidence was not at all persuasive. It is suggested that it was discovered and brought to light because of the publicity of the trial itself. But the trial court doubtless took into consideration the fact that publicity of matters and claims pertaining to the Diver estate was stale news in Wichita when this cause was tried, since the Wilhite case and the case to set aside M. R. Diver's will had preceded this case.

A final suggestion is made in the brief of plaintiff's counsel. They express the "hope that this court is painfully conscious of the unsatisfactory state of the proof with regard to the identification of the father of Frank Diver." It is also suggested that if permitted plaintiff's counsel will produce new evidence to this court (not yet revealed to the trial court) to show that Frank was not the son of Joseph R. Diver. There are several answers to that suggestion. One is that it would be a useless labor so far as plaintiff is concerned, for the issue has been squarely raised and squarely determined in this action that plaintiff is not the openly and notoriously acknowledged daughter of Joe Diver, so she has no concern with the Diver estate. Moreover, this court is not trying this case. It is reviewing the errors alleged to have been committed by the court which did try this case. We do not receive and consider testimony in appealed cases which was not submitted to the trial court. (*Wideman v. Faivre*, 100 Kan. 102, 107, 108, 163 Pac. 619; *State Bank v. Gonder*, 132 Kan. 636, 639, 640, 296 Pac. 338.)

The industry and zeal of plaintiff have suggested some other matters for our consideration, none of which are of controlling significance, and scarcely within the proper scope of an appellate review, and we would not be justified in taking further time and space to discuss them. There is no error in the record and nothing appears therein to raise any misgiving that justice may have miscarried.

The judgment is therefore affirmed.