No. 35,913

CHICAGO RIVET & MACHINE COMPANY, *Appellant*, v. CAPITAL CITY
LUMBER & PLANING MILL, *Appellee*.

(145 P. 2d 171)

Opinion filed January 22, 1944.

*W. Glenn Hamilton,* of Topeka, argued the cause, *E. R. Sloan, Floyd Sloan, Eldon R. Sloan,* all of Topeka, *Tyree G. Newbill* and *W. Arnold Brannock,* both of Kansas City, Mo., were on the briefs for the appellant.

*Ralph F. Glenn,* of Topeka, argued the cause, and *Oscar Raines, Wendell L. Garlinghouse* and *Warren W. Shaw,* all of Topeka, were on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This is an action to recover money. Judgment was for the defendant on a cross petition. The plaintiff appeals.

The plaintiff is in the business of making rivets in Chicago. It alleged that between certain dates in 1941 it furnished merchandise to the defendant and that there was still owing it the sum of $615.87. Judgment was prayed for this amount.

The defendant operates a planing mill in Topeka. It alleged by way of cross petition that it had a contract with the government to build certain field desks in accordance with specifications, which

specified the size and quantity of rivets needed; that it furnished the plaintiff with a copy of these plans; that it was required to complete the making of the desks within a certain time, all of which was known by the plaintiff. The answer further alleged that the plaintiff agreed to make prompt delivery of all the rivets needed by defendant for the work; that plaintiff, pursuant to the oral contract, sent to defendant certain machines for use in fastening the rivets which were the wrong size and kind, and that the plaintiff sent rivets of the wrong size and shape so defendant was required to expend $320 in making these rivets so they could be used; that plaintiff also agreed to take certain rivets back and defendant paid freight charges in the sum of $14 and that on account of the failure of plaintiff to furnish these rivets promptly the defendant expended $16.48 in telephone calls and telegrams and that defendant returned to plaintiff rivets amounting to $90.44. The answer further alleged that the failure of the plaintiff to furnish a proper machine and the rivets as provided in the oral contract caused the defendant delay in the delivery of the desks and to be penalized by the government at the rate of $60 per day or a total of $1,020, and on account of this failure in its efforts to complete the contract on time defendant was compelled to pay overtime to its workmen in the amount of $480. Judgment was prayed by the defendant for $1,940.92.

In response to a motion by the plaintiff the court ordered the defendant to make its answer and cross petition more definite and certain, and the defendant did so by stating the names of the individuals with whom the oral agreement pleaded in its answer and cross petition was made, and that the plaintiff agreed to make delivery of the machine and rivets in not more than thirty days after the date of the oral agreement.

The reply was a general denial and an allegation that the rivets and the machines had been delivered promptly.

The case was submitted to the trial court without a jury. The court found in effect that sometime prior to December 5, 1940, the defendant bid for the construction of 1,020 field desks, Type III, and 2,000 of another type known as Type II; that the Type III desks were to be made of 5-ply wood and Type II of 3-ply wood; that about December 5, 1940, a representative of the defendant called on the plaintiff in Chicago with blue prints and specifications for these desks; that the representatives of the defendant told plaintiff that it was not versed in the use of rivets, whereupon plaintiff

assured defendant that it knew the riveting business and could take care of defendant's needs and wants with respect to rivets and riveting machines, and the defendant could rest assured that if it got the government contract its riveting machine needs would be taken care of promptly and properly; that the defendant did get the contract and thereafter on December 11, 1940, it wired plaintiff that it had received the contract and requested shipment of about 20 per cent of the rivets and the machines at once, and on December 14, 1940, the plaintiff submitted to the defendant a list of the rivets required for both types of desks; that plaintiff knew that this was a rush job; that after the contract with the government was entered into the defendant started the construction of the desks and the plaintiff entered upon the business of furnishing it with the necessary rivets and machines. The court further found that the defendant had some difficulty in getting the plaintiff to furnish the rivets necessary to construct samples of the two types to be submitted to the government for inspection, but finally they were furnished and it developed that one of the machines furnished to set the rivets did not perform the work for which it was intended and that some of the split rivets furnished for the large desks were not suitable because by reason of their manner of construction the points spread out and did not properly clinch; that the desks were subject to government inspection and the inspector refused to accept those constructed with these rivets and the defendant notified the plaintiff of this condition about the 28th of February, 1941; that in order that certain unsuitable rivets might be used the defendant reground some of them at an additional cost of $320; that plaintiff was informed that some of the rivets were unsuitable and sent its personal representative to defendant's place of business sometime between February 28 and March 2; that on March 6, 1941, the plaintiff admitted that the 12/16 rivets and 13/16 rivets originally planned for the large desk were not of correct design, whereupon the plaintiff redesigned the rivets and sent the defendant a supply about March 14, 1941; that the redesigned rivets proving satisfactory were shipped to defendant, the last on April 3, 1941. The court further found that on January 18 the plaintiff shipped a riveting machine; that machine proved unsatisfactory and plaintiff sent its representative to make alterations on the machine; that these were completed and the machines ready for use on January 27, 1941; that under the terms of the government contracts 320 large desks were to be delivered on

February 9, 1941, and 700 additional large desks on March 11, 1941; that 500 small desks were to be delivered February 9, 1941, and 1,500 on March 11, 1941; that defendant failed to make delivery of the desks within the time specified and penalties were imposed against the defendant in the amount of $4,174.48; that no desks were delivered to the government under these contracts prior to March 26, 1941, and this was fifteen days subsequent to the time when penalties attached; that a wood production company had brought an action in the Shawnee district court against the defendant in this case for the price of ply-wood furnished the defendant for these desks in the amount of $5,075.80; that this defendant had claimed in a cross petition in that action that it had been damaged by failure of the wood company to furnish materials; that this action was settled by the planing mill company paying the wood company $2,500. The court further found that the defendant had paid a $14 freight bill in returning some rivets; that it returned two shipments of rivets that were sent in the amount of $54.85 and spent $16.48 in telephone calls; that of all the delay chargeable to defendant by the government seventeen days was occasioned by the failure of the plaintiff to furnish rivets of the proper size and shape for use upon these field desks and the failure of the plaintiff to furnish a machine suitable to such rivets and that the average penalty per day was $56, or a total of $952. The court further found to the effect that it was impossible to tell from the evidence how much overtime had been paid by defendant and refused to allow anything to the defendant for that claim. The court further found that except for the claim made by the defendant in its cross petition the plaintiff would be entitled to recover judgment against the defendant in the sum of $615.87.

The conclusions of law were that the defendant was entitled to $1,357.33 on its cross petition that from this should be deducted $615.87, the amount of plaintiff's claim, which would leave a balance of $741.46, for which the court gave judgment for the defendant against the plaintiff.

The plaintiff filed its motion for a new trial and a motion to set aside the judgment and to amend the findings of fact and conclusions of law in various particulars. These motions were overruled. Hence this appeal.

Plaintiff points out here that the defendant pleaded in its cross petition a contract whereby the plaintiff agreed to furnish rivets.

It then refers to the findings of the trial court and argues that these amount to a finding that no such contract was made. Plaintiff argues that under the court's findings what took place on December 5 was a mere conference and bound no one.

We are unable to reach this conclusion. As has already been noted in this opinion, the court found that on December 5 when defendant called on plaintiff in Chicago it had a blue print of the large desk showing the rivets needed for this desk. The court further found that defendant was assured by plaintiff that if it obtained the contract plaintiff would take care of its riveting needs promptly and properly. We think that this finding when considered with the one wherein the court found that on December 11, 1940, the defendant wired plaintiff for shipment of twenty percent of the rivets followed by a letter of plaintiff submitting a list of the rivets required amounted to a finding that a contract was consummated on either December 5 or December 14, 1940. It makes but little difference which date it was. This in view of the finding that after the contracts were entered into with the government defendant started making desks and the plaintiff entered on the business of furnishing it with rivets. There was substantial evidence to sustain these findings. As a matter of fact, there was very little conflict in the oral testimony. Most of what transpired between the parties consisted of letters and telegrams about which there was no dispute at all. Under the circumstances the findings of the trial court on the issue of the making of the contract will not be disturbed. See *Voiland Painting Co. v. Christman,* 138 Kan. 289, 31 P. 2d 17, and *Solomon v. Lampl,* 135 Kan. 469, 11 P. 2d 1028.

The plaintiff next argues that the conference of December 5, the telegram of December 11 and the letter of December 14, 1940, did not constitute an agreement because the telegram was indefinite as to amount, terms and kind and character of rivets and was an attempt to limit the order to only a small proportion of the rivets needed. We are not impressed with this argument. The defendant's agents had the blueprints and specifications for the large desk with them at the conference of December 5. The specifications for both types of desks were available to the plaintiff at the office of the army quartermaster in Chicago. It knew how many of each type desk the defendant had contracted to make. This furnished it with as much information as to amount, kind and character of rivets required as was possessed by defendant. All these matters

are covered by the trial court's findings upon substantial evidence. As to terms, that matter does not appear to have been discussed by the parties in any of the lengthy correspondence that passed between them. Plaintiff went ahead and completed the contract. It brought this action and was credited with the full amount for which it sued. Under such circumstances it cannot now claim there was no contract because the court did not make a finding as to the terms.

The next argument of plaintiff is that there was no evidence to sustain the allowance of $320 for grinding rivets. The record discloses that the defendant reached a point where it was necessary for it to grind the points on some rivets that had been furnished and which were otherwise satisfactory. There was substantial evidence that this was done while defendant was waiting for the delivery of proper rivets. There is no dispute as to the fact that about two hours time at fifty cents an hour was spent grinding the rivets for each desk and the rivets were ground for 320 desks and this would make $320 which is allowed for that item.

Plaintiff next argues that the court erred in allowing the damages for seventeen days delay at $56 per day or $952. The contract the defendant had with the government contained the following clause:

"Delays—Liquidated Damages: If the contractor refuses or fails to make delivery of the materials or supplies within the time specified, or any extension thereof, the actual damage to the government for the delay will be impossible to determine and in lieu thereof the contractor shall pay to the government, as fixed, agreed, and liquidated damages for each calendar day of delay in making delivery, a sum equal to one-fifth of one percentum (1/5 of 1%) of the price of each unit for each day's delay after the date or dates specified for deliveries."

The basis of the argument of plaintiff in this connection is that defendant testified and the court found that some delay was occasioned by the failure of the company which was supplying the plywood to get it to defendant on time and the testimony of defendant as to the seventeen days was only an estimate as to how much of the delay was caused by plaintiff, not based upon any exact figures as to the particular dates on which the failure of the plaintiff to furnish the rivets caused delay. This is not quite correct. There was some evidence that the failure of the plaintiff to ship the sort of a riveting machine that would work on these rivets caused thirty days delay. There is also evidence that about four to six weeks delay was caused by the defendant being compelled to wait while

the plaintiff manufactured new rivets. The plaintiff knew at the time it entered upon the business of furnishing rivets to defendant that there would be government inspection on the desks; that requirements must be fully met and that it was a rush job and delay would cause liquidated damages to be assessed against the defendant. Under such circumstances it had reason to foresee that its failure to send the proper riveting machine or proper rivets would result in damages and should be held liable for it. See *Gulf States Creosoting Co. v. Loving*, 120 F. 2d 195, also 25 C. J. S. 493, sec. 28. In the case of *Skinner v. Gibson*, 86 Kan. 431, this court said:

"It is a general rule that damages may be recovered when they arise naturally—that is, according to the usual course of things—from the breach of a contract, or are such as may reasonably be supposed to have been in the contemplation of the parties at the time they entered into it." (Syl. ¶ 1.)

See, also, *Lumber Co. v. Sutton*, 46 Kan. 192, 26 Pac. 444, and 15 Am. Jur. 447, § 47.

. The plaintiff contends that the court erred in allowing credit for the unsuitable rivets returned, for the telephone and telegraph expenses and for the freight charges in returning the rivets. These were all expenses that the plaintiff's delay in furnishing rivets caused and were proper items of damage. The plaintiff filed a somewhat lengthy motion asking the trial court to amend its findings of fact in several particulars. It will add nothing to this opinion to discuss those requests item by item for the reason that the theory upon which they were asked has already been discussed. We find no error in the refusal of the trial court to amend its findings. They were all sustained by substantial evidence.

The judgment of the trial court is affirmed.