No. 26,887.

MOLLIE GLATHART, Administratrix of the Estate of P. D. BROWN,
Deceased, *Appellee,* v. W. J. MADDEN, *Appellant.*

SYLLABUS BY THE COURT.

1. DESCENT AND DISTRIBUTION—*Action Between Heirs—Accounting.* An owner
of personal property died intestate on December 19, 1917, leaving as his
heirs two grandchildren who were brother and sister. The brother had been
decedent's confidential agent, in active charge of investment, collection,
and reinvestment of his principal's funds. No administrator of the estate
was appointed and, under the law, claims of creditors were barred after
February 7, 1920. The brother did not account to his sister for her share
of the estate. *Held,* she was privileged to sue for an accounting and for
the sum found to be due her.

2. LIMITATIONS OF ACTIONS — *Operation and Effect of Bar — Administratrix
Suing for Her Personal Benefit as Heir.* In April, 1922, the sister procured
her own appointment as administratrix of the estate, and on August 17,
1923, she commenced suit as administratrix against her brother for an ac-
counting with respect to his agency for the decedent, and for the sum found
to be due to decedent's estate. *Held,* the action was one for the sister's
own personal benefit as heir, she as an individual was the real party in in-
terest, and the statute of limitations should be applied accordingly.

3. DESCENT AND DISTRIBUTION—*Action on Coheir's Implied Contract to Con-
vey—Limitations.* An action by the sister on her coheir's implied contract
to pay money and the value of property received and held for her use and
benefit, would have been barred after three years from the time she could
have sued. *Held,* the action was barred.

4. LIMITATIONS OF ACTIONS—*Removal of Bar.* Facts pleaded as tolling the
statute, but not established by the findings of fact on which judgment was
rendered, did not remove the bar.

Appeal from Ellis district court; JACOB C. RUPPENTHAL, judge. Opinion
filed February 12, 1927. Reversed.

*A. D. Gilkeson,* of Hays, *Guy L. Hursh* and *Silas Porter,* both of Topeka, for
the appellant.

*E. A. Rea, E. C. Flood,* both of Hays, *T. M. Lillard, Bruce Hurd* and *O. B.
Eidson,* all of Topeka, for the appellee.

Agency, 2 C. J. p. 546 n. 21. Appeal and Error, 3 C. J. p. 869 n. 95; 4 C. J.
p. 775 n. 26; 4 C. J. p. 775 n. 26. Descent and Distributions, 18 C. J. pp. 891 n.
29, 892 n. 50. Executors and Administrators, 23 C. J. pp. 1000 n. 51, 1002 n. 60,
1041 n. 57, 1055 n. 27, 1172 n. 30; 24 C. J. p. 341 n. 52. Limitations of Actions,
37 C. J. pp. 684 n. 11, 685 n. 14, 1259 n. 36; 17 R. C. L. 976.

The opinion of the court was delivered by

BURCH, J.: The action was one by the administratrix of the estate of a deceased principal to require his agent and attorney in fact to account, and to recover judgment for the balance found due as the result of the accounting. Among other defenses, the agent pleaded the statute of limitations. Plaintiff recovered, and defendant appeals.

P. D. Brown was a prosperous farmer, who lived in Mercer county, Missouri. He owned 660 acres of land, and possessed liquid financial resources. In 1910 he commenced to send money to Kansas, to be loaned on real estate and other security, and he continued to do so until the greater portion of his investable funds had been transferred. Early in 1910 he gave W. J. Madden, of Hays, power of attorney to lend money, buy and sell commercial paper, release mortgages, and do other business for him. Later in the year he removed to Hays, where he resided until his death, which occurred on December 19, 1917. From the time of Madden's appointment until Brown's death, Madden was Brown's business and financial agent, in active charge of the investment, collection, and reinvestment of Brown's funds. The business was so conducted that the relations between Madden and Brown were highly fiduciary.

Brown and his wife had an only child, a daughter, who was married to Ed F. Madden, of Hays. After Brown and his wife removed to Hays, Mrs. Brown died, and Brown went to live with his daughter. After his daughter's death, he continued to live in the Ed F. Madden home. Ed F. Madden and his wife had two children, W. J. Madden and Mollie Madden Glathart. At the time of Brown's death, W. J. Madden, his wife and two children, and Mollie Glathart, were living with Ed F. Madden. Ed F. Madden died in September, 1921.

Brown died intestate, leaving as his heirs his two grandchildren, W. J. Madden and Mollie Glathart. He was buried in Missouri, and the two grandchildren attended the funeral held there. After they returned from the funeral, and in December, 1917, at her father's home, Mollie inquired of her father and brother about her grandfather's estate. They told her Brown left no estate, that he had deeded his land to Ed F. Madden, and had given his personal property to Ed F. and W. J. Madden. The deed was produced, and was exhibited to her. In April, 1922, Mollie was appointed admin-

Glathart v. Madden.

istratrix of Brown's estate, and on August 17, 1923, she commenced the action which resulted in the judgment appealed from.

The petition alleged that an arrangement was made in 1910 between Brown and W. J. Madden for Madden to lend, collect, and reinvest money belonging to Brown, and pleaded execution of the power of attorney. The petition further alleged that, pursuant to the arrangement, money, credits, and securities came into Madden's possession, that at the time of Brown's death Madden had not been called on for the money and securities in his hands, and that he had in his possession money, notes, mortgages, and other securities belonging to Brown's estate which plaintiff was unable to itemize, but which amounted to approximately fifty thousand dollars. The petition also alleged death of Brown, appointment of plaintiff as administratrix, demand on Madden for an accounting, and his refusal to account. The prayer was for an accounting, and for judgment for the amount found due. Among other defenses, the answer alleged that any cause of action arising out of the transactions referred to in the petition accrued in Brown's lifetime, and plaintiff's action was barred by the statute of limitations. The cause was referred to a referee, who returned findings of fact and conclusions of law. The referee found Brown made no gift of his personal property to Ed F. and W. J. Madden, and found W. J. Madden was indebted to the estate in the sum of $30,343.35. The referee's conclusions of law which are now material follow:

"4th. The conversation found to have been had between Mollie Glathart and Ed F. Madden at the home of the latter soon after the death of P. D. Brown, did not constitute a demand for money or property or an accounting for the same, and no other act or word on the part of Mollie Glathart started the statute of limitations in operation in favor of the defendant.

"5th. The statute of limitations did not begin to run in favor of the defendant until the appointment of the plaintiff as administratrix in April, 1922.

"6th. Plaintiff's cause of action is not barred by the statute of limitations.

"7th. The plaintiff is entitled to judgment against the defendant for the sum of $30,343.45, which should bear interest at the rate of six per cent per annum from and after the appointment of the plaintiff as administratrix. . . ."

In the district court, defendant moved to modify certain findings of fact returned by the referee, including finding No. 24, which related to the conversation referred to in the fourth conclusion of law. Plaintiff strenuously denied that any such conversation took place. Her testimony follows:

"Q. Did you have a conversation with W. J. Madden respecting the estate of your grandfather, P. D. Brown, at the home of Ed F. Madden, where you

say you had all been living together prior to the death of P. D. Brown, the day after your grandfather's funeral?  A.  I did not—no, sir.

"Q.  You say no; now is it not a fact that at the home the day after the grandfather's funeral, in the presence of W. J. Madden's children, you had a conversation with W. J. Madden respecting your grandfather's estate?  A.  I did not—no, sir; I did not.

"Q.  And is it not a fact that at that time, in the presence of Mr. Madden's children and your father, W. J. Madden told you that P. D. Brown left no estate?  A.  No, sir.  That is not a fact; no, sir.

"Q.  You say then that there was no such conversation had at that home with reference to your grandfather's estate, at which time W. J. Madden told you that P. D. Brown left no estate?  A.  No, sir—no, sir."

The referee found a conversation took place, but that W. J. Madden was not present.  The district court modified the finding in accordance with the evidence, to read as follows:

"24th.  Shortly after the funeral of P. D. Brown, which took place in Missouri, and which was attended by Mrs. Glathart and the defendant, and in December, 1917, Mrs. Glathart, at the home of her father in Hays, made some inquiry of her father, E. F. Madden, and of her brother, W. J. Madden, the defendant herein, concerning the Brown estate, and was told by her father and her brother that her grandfather left no estate, that Brown had deeded his real estate to E. F. Madden and had given his personal property to him and the defendant.  The defendant's daughters went at the suggestion of E. F. Madden to the defendant's office to procure a deed to real estate, so that Mrs. Glathart might examine it.  The daughters procured the deed from their father at the office, took it to the residence of Ed F. Madden, and it was exhibited to Mrs. Glathart.  Mrs. Glarhart did not know at the time anything concerning her grandfather's estate, and had no knowledge as to whether in fact the gift referred to by her father had actually been made, or if made, rightfully so, except as indicated by the deed just referred to, the nature of which and the property described therein is not disclosed by the evidence."

The district court having indicated that it would adopt the referee's findings and conclusions of law, defendant asked and was granted leave to amend his answer to conform to the proof, by alleging Mollie Glathart as an individual was the only person interested in the result of the action, alleging notice to her of defendant's claim as appeared by finding No. 24, and alleging the action was barred by the statute of limitations.  Plaintiff then asked and was granted leave to amend her reply to meet the issue tendered by the amendment of the answer.

The amendment to the reply consisted of three paragraphs.  The first was a general denial.  The second reads as follows:

"For further answer to the amendments to defendant's answer, the plaintiff states the cause of action set forth in plaintiff's petition did not accrue until

Glathart v. Madden.

after the death of P. D. Brown, and that there was no one who could bring said action until an administrator was appointed for said estate, and that no administrator was appointed until the letters of administration were granted to this plaintiff on the 21st day of April, 1922, and within less than two years next prior to the commencement of this action."

The substance of the third paragraph was that Madden alone knew about Brown's property; he was plaintiff's brother, and older than she; she reposed implicit trust and confidence in him; he knew she reposed implicit confidence and trust in him, and knew she relied on him to divulge the true facts concerning the condition and affairs of Brown's estate; if the statements found to have been made in finding No. 24 were made, they were made maliciously and fraudulently; that disregarding his duty to make full and truthful exposition of the affairs of the estate, Madden concealed the facts, and made the statements for the purpose of deceiving and defrauding plaintiff, and for the purpose of inducing her to forego investigation; and she did not discover the fraud practiced on her until within two years before the action was commenced.

Plaintiff had moved the court to adopt the referee's findings of fact and conclusions of law. The findings having been modified, and the pleadings having been amended, this motion was sustained, and judgment was rendered accordingly.

When P. D. Brown died, he left no will, he had no widow to claim exempt articles, and no administrator of his estate was appointed. What became of his personal property?

The property was subject to appropriation for payment of debts, if there were debts, but property not necessary for payment of debts is distributed to heirs, and is distributed in kind whenever that may be done satisfactorily and equitably. (R. S. 22-130, 22-131.) If an administrator be appointed, he takes legal title which relates to date of death. This is necessary in order that he may properly perform his functions, and in order that the probate court may properly perform its functions. (*Citizens State Bank v. Moore*, 121 Kan. 628, 630, 249 Pac. 587.) The administrator takes title, however, for purpose of administration only. He represents the estate for the benefit of two classes of persons, creditors and heirs. The claims of creditors come first. When they are satisfied, the residue of the estate goes to heirs. The result is, on death of an intestate his heirs take an interest in his personalty by descent. This interest is property, and is often referred to as equitable title. The interest is not

equitable, however, but legal, and although it may be extinguished, is not contingent. The extent of the privileges and powers of heirs which constitute their property is conditioned, however, by liability of assets to appropriation for payment of debts.

Appropriation for payment of debts depends, first, on existence of debts, and second, on the taking of proper steps to secure allowance and payment of debts. No debt may be exhibited as a demand against an estate until an administrator has been appointed. A creditor may not wait indefinitely, however, for appointment of an administrator to whom demand may be exhibited. For fifty days after death of an intestate, his widow and next of kin are preferred for appointment. After that, administration may be granted to a principal creditor, if there be one competent and willing to undertake the trust, and if not, to some suitable person (R. S. 22-312) ; and a creditor who fails to exercise diligence to procure appointment of an administrator to whom he may present his claim for allowance, loses it. (*Timmonds v. Messner*, 109 Kan. 518, 200 Pac. 270, and cases cited in the opinion.) Formerly, the reasonable time within which a creditor might secure appointment of an administrator was three years. In 1911 the period was reduced to two years. The result is, at the expiration of two years and fifty days from death the contingency that personalty may be appropriated for payment of debts no longer exists if no administrator has been appointed. The privileges and powers of the heirs are no longer limited, and their ownership becomes unqualified ownership. The same is true if the primary condition to appropriation—existence of debts to be paid—does not attach. Ordinarily, letters of administration, title in the administrator, reduction of property to possession, inventory, and appraisement, are means to the end that creditors may be satisfied, and when creditors are satisfied the function of administration has been performed. Likewise, when there are no creditors administration has no office to perform. There are some exceptions. There may be compulsory administration for succession tax purposes. Administration may be resorted to, and sometimes may be a practical necessity when there are no creditors. (*Nickel v. Vogel*, 76 Kan. 625, 633, 92 Pac. 1105.) In the latter instance, however, the administrator acts for the sole benefit of the heirs. Their interests are not subject to extinguishment, they are the real parties in interest, and their

interests are only nominally qualified by the administrator's legal title.

When liability to appropriation for payment of debts does not exist, or has been removed, and no administrator has been appointed, heirs hold in common, and have all the privileges of ownership. They may take or recover possession of assets, collect debts, and make distribution, in kind or otherwise. On division by agreement, each one becomes owner in severalty of his share. (*Brown v. Baxter,* 77 Kan. 97, 94 Pac. 155, 574.) Because of the derivative character of the law relating to administration of decedents' estates, there is some conflict in the authorities upon this subject. (23 C. J. 1001.) This court prefers the liberal view, and is already committed to it by the decisions in the cases of *Nickel v. Vogel,* supra, and *Brown v. Baxter,* supra.

P. D. Brown died on December 19, 1917. After February 7, 1920, claims of creditors against his estate, if there were any, were barred. After that, no person in existence was interested in requiring W. J. Madden to render an account of his conduct as P. D. Brown's agent, except Mollie Glathart. By changing the petition which she filed to state that Brown died intestate, that she and Madden were his only heirs, and that no administrator of his estate had been appointed, she could have filed the petition in her individual capacity, to obtain the relief she prayed for as administratrix. The district court possessed the same power to compel discovery and to require an accounting for her benefit as an individual that it possessed to compel discovery and to require an accounting for her benefit as administratrix. If she were successful, the same result would be attained, with this difference: Suing as an individual, she would recover one-half the amount due from Madden to Brown's estate. The other half would belong to Madden. Suing as administratrix, she would take the entire sum found due from Madden to the probate court, the probate court would deduct the costs of administration, including an allowance to the administratrix, the probate court would order her to pay back to Madden one-half the remainder, and she would keep the other half. Defendant could not object to her suing in her individual capacity, because it was sufficient for him that he would not be denied privilege to urge whatever defenses he might have.

The law favors economy, prefers direction to indirection, and is

definitely committed to a policy of repose. The statute of limitations may not be evaded by circuitousness. The principle involved is that the record is searched for the essence of the controversy and the real party in interest, and application of the statute is considered as it affects them. A statement of the principle, and a negative application of it, appear in *Horton v. Jones,* 110 Kan. 540, 204 Pac. 1001:

"In applying statutes of limitation, courts are not concluded by the names of the parties to an action, but look to the merits of the controversy, the nature of the relief, and the effect of the judgment. The nominal plaintiff is passed by, the record is examined to ascertain who is the real party in interest and, if the real party in interest be not barred, the nominal plaintiff is not barred." (p. 541.)

Strike from the concluding portion of the quotation the word "not," and a positive application of the principle is stated.

The action of Mollie Glathart as administratrix was based on implied contract of the agent to pay money and the value of property due to his principal, on an accounting. Regarded as an action by Mollie Glathart for her share of her grandfather's estate, it was based on the implied contract of her brother to pay money and the value of property received and held for her use and benefit. The three-year statute of limitations applies to a cause of action of this nature. The action was commenced five years and eight months after Brown's death, and more than three years and six months after Mollie Glathart's interest in his estate had ripened to unqualified ownership.

Plaintiff confidently relied, and the district court evidently rested the judgment, on the cases of *Carney v. Havens,* 23 Kan. 82, and *Mills v. Mills,* 43 Kan. 699, 23 Pac. 944. Those cases involved claims in favor of the estates of deceased persons. In each one no cause of action accrued until after death of the creditor. The court held the running of the statute of limitations in favor of the debtors was suspended until, by appointment of an administrator, some one was in existence who could bring suit.

In the case of *Toby v. Allen,* 3 Kan. 399, the court said death of a debtor suspends the statute of limitations until an administrator is appointed, because there must be a party to be sued. In the case of *Nelson, Adm'r, v. Herkel, Adm'r,* 30 Kan. 456, 2 Pac. 110, the syllabus reads:

"Not only must there be a person to sue, but a cause of action cannot

accrue or exist unless there is a person in being against whom an action can be brought and the right of action enforced. *Held,* therefore, that the death of the debtor operates to suspend the statute of limitations until an administrator is appointed."

In the case of *Bauserman v. Charlott,* 46 Kan. 480, 26 Pac. 1051, the question was whether death of a debtor suspends the statute indefinitely—a question not presented to the court in any previous case. In the opinion prepared by Chief Justice Horton, who had written the opinion in the case of *Nelson v. Herkel,* it was said:

"It is also true that this court has said that the death of the debtor operates to suspend the statute. (*Toby v. Allen,* 3 Kan. 399; *Hanson v. Towle,* 19 id. 273; *Nelson v. Herkle,* 30 id. 456; *Mills v. Mills,* 39 id. 455.) But this court has never said, when the question was properly presented, that the creditor can indefinitely prolong the time of limitation by his own omission or refusal to act, or that the death of the debtor operates to suspend the statute of limitations indefinitely." (p. 483.)

It will be observed the case of *Mills v. Mills,* relied on by plaintiff in the present action, was cited. The opinion emphasized the sound policy of statutes of limitation, and it was held that if a creditor would save his claim against a decedent from bar of the statute, he must use diligence to take out letters of administration for himself or some other person.

In this case, it is sufficient to say the court has never held, when the question was properly presented, that death of a creditor operates to suspend the statute of limitations indefinitely. To do so would defeat the policy of the statute. One who is privileged to sue on his own account without appointment of an administrator should do so, and should do so within the statutory period. His situation is analagous to that of a creditor of a decedent, who may end suspense by procuring appointment of an administrator. He should not be allowed to circumvent the statute by having himself appointed administrator and bringing suit in his representative capacity for his sole benefit as an individual, after direct action in his own behalf has become barred. It may be observed here that in this instance plaintiff was next of kin and preferred by law for appointment as administrator, and the court has not said, in any case in which the question was properly presented, that such a person may prolong the time of limitation indefinitely by omission or refusal to act.

Plaintiff's amendment to her reply did not remove the bar of the

statute. To do that it was necessary the facts pleaded in the third paragraph of the amendment be established by findings of fact. Plaintiff did not ask for any modification of the findings of fact, the findings did not include and were not extended to cover the new matter, and the decision was based on the second paragraph of the amendment, as indicated by the fourth conclusion of law.

Madden's agency for Brown ended with Brown's death, or at least with the conclusions of certain transactions *in fieri* at the time of his death. At Brown's death, his property descended to his heirs; but the statute of descents and distributions does not provide that the confidential relation of agency also descends to heirs. There must be a new agency for the heirs, created in some consensual way, and Madden repudiated that relation immediately after Brown's funeral.

The fact that Madden was plaintiff's brother and older than she, did not make his relation to her fiduciary. The test is not what she supposed, but what ground he furnished her for belief. The litigation concerns property. Madden was heir and plaintiff was heir, and unless he manifested to her an attitude furnishing ground for belief that he would stand toward her in a relation of trust and confidence with respect to the property, and she accepted and relied on that manifestation, he may not be held to such relation. There is no finding of any fiduciary relation, and the 24th finding of fact made a finding of the character indicated impossible.

The 24th finding is that shortly after Brown's funeral, plaintiff, not knowing at the time anything about her grandfather's estate, asked for information concerning it. Her father and her brother told her her grandfather left no estate; they said her grandfather had deeded his real estate to her father, and the deed was shown to her; and they said he had given his personal property to her father and brother. She alleged in the amendment to the reply that if that statement was made, it was made with malicious intent to deceive and defraud. The court did not so find. Assume intent to deceive is inferable from the fact the court found Brown made no gift of his personal property to plaintiff's father and brother, as they said he did; plaintiff did not allege that she placed any reliance whatever on the statement, or was induced to act or remain inactive on account of it. She could not consistently do so, because she denied the conversation occurred; and there is no finding that she did act to her detriment in reliance on the statement.

The cause of action pleaded in the petition was based on contract, and not on fraud, and the fraud pleaded in the reply was restricted to the statement which appears in the 24th finding. Just before the reply was amended, that finding was modified on defendant's application, to conform to the proof. If plaintiff wished to get fraud into the finding, or to secure an independent finding of fraud relating to the incident narrated, she had opportunity to do so. The court covered the incident by the modified finding, and fraud was not included.

Plaintiff's motion that the court adopt the findings of fact and conclusions of law was sustained, judgment was rendered accordingly, and she is concluded by the findings of fact.

"If, upon the trial of a question of fact by the district court, findings of fact are made, and such findings are not assailed in the district court as incomplete or incomprehensive, it wll be presumed by this court that they embrace all the facts of the controversy established by the proof." (*Shuler v. Lashhorn,* 67 Kan. 694, syl. ¶ 4, 74 Pac. 264.)

It is clear the action was commenced and prosecuted on the theory that Brown's death suspended running of the statute of limitations until it pleased plaintiff to release it. Judgment was invoked and was rendered on that theory. The court holds the theory is unsound.

The judgment of the district court is reversed, and the cause is remanded with direction to render judgment for defendant.