No. 32,657

Samuel R. Edwards, as Executor, etc., *Appellant*, v. Charles E. Moore et al., *Appellees.*

(54 P. 2d 933)

Opinion filed March 7, 1936.

*Thomas C. Forbes, Carl C. Chase,* both of Eureka, *James E. Smith, Earl H. Hatcher, Frank H. McFarland* and *Schuyler W. Jackson,* all of Topeka, for the appellant.

*E. E. Pedroja,* of Eureka, *Dean McElhenny, Phillip Gault, S. M. Brewster, J. L. Hunt, Margaret McGurnaghan, John H. Hunt* and *G. M. Brewster,* all of Topeka, for the appellees (except John A. Edwards).

The opinion of the court was delivered by

Burch, C. J.: The action was one by the executor of the estate of Rowland J. Edwards, deceased, to recover on promissory notes given the decedent by John A. Edwards, and to foreclose a lien on land imposed by decedent's will, securing payment of the notes. The defendants, so far as material here, were the makers of the notes, and mortgagees and purchasers of the land deriving title from him. Plaintiff recovered judgment against John A. Edwards on the notes, but was denied judgment for lien, and the titles of lien holders and purchasers were quieted. Plaintiff appeals.

The trial was by the court, and elaborate findings of fact and conclusions of law were returned. Objection was made to some of the findings, and requests were made for additions to and substitutions for some of the findings. There is no abstract of the record. Instead, appellant has abstracted testimony under each of the suggestions respecting the findings. The suggestions will not be examined for the purpose of ruling on them. One conclusion of law was that plaintiff, representing himself and his sister, Hannah M. Honhart, who are the real parties in interest, was guilty of laches, and was estopped to assert lien on the land. It will be sufficient to consider this conclusion of law only. For that purpose the findings

of fact are approved, but some of the evidence abstracted by appellant will be considered in connection with the findings.

Rowland J. Edwards died testate, leaving land and personal property inventoried as worth between $250,000 and $300,000. His indebtedness did not exceed $18,000. Under the will the greater part of his estate was devised to his three children, Samuel R. Edwards and John A. Edwards, residents of Kansas, and Hannah Honhart, a nonresident.

The will was executed on December 19, 1916. On December 20, 1916, Rowland J. Edwards wrote a memorandum, addressed to his children, relating to subjects important to them in case of his death. Among other things, he told where copies of his will, executed in triplicate, would be found, and where the key to his lock box in the bank would be found. The memorandum spoke of John's notes to his father of about $25,000. When the box was opened it contained two notes of John A. Edwards to his father. One note was for $22,370, dated April 1, 1915. The other note was for $3,052, dated April 2, 1915. The larger note was payable one year after date, and matured April 1, 1916. The smaller note was payable November 1, 1916. Each note bore interest at the rate of 7 percent per annum.

Rowland J. Edwards died March 2, 1917. His will was duly probated, and the executors named in the will, Samuel R. and John A. Edwards, were appointed as such by the probate court. The will devised land, including the land in controversy, to John A. Edwards, and contained the following item:

"I direct that John A. Edwards is to pay to my estate all his personal obligations to me at the time of my death, and is to care for and pay all papers or notes given as evidence of the indebtedness on which I am indorser or otherwise liable; otherwise, the property herein bequeathed to him, shall stand as security for such indebtedness, and be charged therewith, and he must save all other property harmless therefrom."

On February 28, 1918, an inventory of the assets of the estate was filed. The inventory was verified by Samuel R. Edwards. The verification stated he had listed all property of the deceased which had come to his knowledge, and all just claims of the estate against him and all other persons. The notes were not included in the inventory. Mrs. Honhart knew the contents of the inventory, and knew the notes were not included. She and Samuel R. Edwards had known of the notes ever since the death of their father.

Among the papers in the office of the probate judge is a letter from Samuel R. Edwards to the probate judge, dated February 17, 1923. The letter stated, among other things, that notes of John A. Edwards, of the face value of $25,000, were still held for determination as to validity, as assets of the estate, and when the matter was settled a final account would be filed. The letter was not filed as a paper in the case. Unless it was read by persons investigating title to the land, it was not notice to them of existence of the notes, and the district court did not find that anybody who might be affected with notice ever saw the letter.

On December 9, 1926, a motion was filed to remove John A. Edwards as executor. On February 27, 1929, John A. Edwards was removed, and an order was entered that the remaining executor, Samuel R. Edwards, was a proper person to bring proceedings to determine title and ownership of the notes and have all matters in dispute settled. No order to bring such suit was made. Previous to the motion to remove, made nearly ten years after the will was probated, there was nothing on record in the probate court showing existence of the notes.

The present action was commenced November 25, 1929, thirteen years after maturity of the notes, and more than twelve and a half years after the will was probated. Meantime many things had occurred.

After the death of Rowland J. Edwards the board of county commissioners of Lyon county, the county in which the will was probated, and the state tax commission, after a full investigation, found the larger note did not represent a real debt. The district court found, on disputed evidence, that Samuel R. Edwards made no contention at any of the hearings that the notes were taxable.

In June, 1919, John A. Edwards mortgaged the land in controversy for $14,000, and Samuel R. Edwards knew of the transaction and that John A. Edwards was mortgaging the land.

In April, 1922, John A. Edwards executed to the Central Trust Company a principal mortgage securing a note for $32,000, and a commission mortgage for $1,600, securing a note for that amount. The note and mortgage for $32,000 were sold by the Central Trust Company to the Rutland Savings Bank, of Rutland, Vt.

An abstract of title was furnished to the Central Trust Company, which disclosed the item of the will which has been quoted. The attorney for the Central Trust Company made various require-

ments, certain affidavits were supplied, and the attorney approved the title. One affidavit was that of John A. Edwards, the proposed mortgagor and coexecutor of the estate. He stated he was well acquainted with the affairs of the Rowland J. Edwards estate, which was of considerable value, and knew from his own knowledge that all claims against the estate had long since been paid, that he had paid all personal obligations due from him to the estate and he had taken up all notes and other indebtedness of any kind on which the estate of Rowland J. Edwards was liable.

The abstract and affidavits were delivered to the Rutland Savings Bank with the note and mortgage which it purchased, were examined by its attorney, and the title was approved.

In 1924 the commission mortgage to the Central Trust Company was foreclosed, the land was sold to the Central Trust Company, and on August 28, 1924, the sale was confirmed. Neither of the executors of the estate nor Hannah Honhart was made a party to the suit.

On March 12, 1925, John A. Edwards and wife conveyed the land to Charles E. Moore. On July 27, 1926, Moore redeemed by conveying a part of the land to the Central Trust Company. The Central Trust Company subsequently conveyed that part of the land to the Rutland Savings Bank.

In July, 1926, Moore entered into a contract to sell and to convey by warranty deed 501 acres of the land to Joseph and J. F. Pedroja. The title was examined by an attorney and was approved. The sale was consummated, and certificates of deposit in the sum of $26,-646.68 were delivered in payment of the consideration.

When the consideration was paid and the deed to the Pedrojas was delivered they called an attorney for advice respecting a collateral matter. As the attorney was returning to his office he met Samuel R. Edwards, who said the estate had some claim on the land. This was on August 6, 1926, nearly nine and a half years after the will was probated.

On March 3, 1922, John A. Edwards wrote a letter to Samuel R. Edwards, asking Samuel R. Edwards to do one of two things: bring an action to determine whether John A. Edwards owed the estate, or drop the subject and forget it. The letter concluded as follows:

"I hope that you will decide definitely and forever on one of the two courses and in the near future. I much prefer going to bat than to be everlastingly and secretly accused of a wrong that has not been committed."

This letter was written five years after Rowland J. Edwards died.

Four months after the Pedrojas had purchased, the motion to remove John A. Edwards as executor was filed, and the fact there were notes was brought on the record of the probate court for the first time. Nothing was done about this motion for more than two years, and more than twelve years after the will was probated action was taken in the probate court about the notes found in Rowland J. Edwards' lock box after his death. It is now March, 1936, and Samuel R. Edwards is here asking this court to adjudge that a lien has always existed on the land, a judgment which would be fraught with disastrous consequences to those who have dealt with the land.

The will did not create a lien on the land unless the notes of John A. Edwards in fact constituted an indebtedness due to the estate. Samuel R. Edwards was present when his father's box containing the notes was opened. He presented the will for probate. It was his duty to return a true inventory of the assets of the estate. Had he filed a true inventory there would have been record notice of lien, and all subsequent mortgagees and purchasers would have been able to act advisedly. He filed an inventory which showed there was no lien, and thus laid the foundation for future trouble, when he might have prevented future trouble. Therefore, responsibility for the tangled web which was subsequently woven is traceable to him.

After Rowland J. Edwards died, John A. Edwards assured Samuel R. Edwards the notes did not represent enforceable obligations in favor of the estate and he would so show. John A. Edwards was not able to do this to the satisfaction of Samuel R. Edwards, but as early as June, 1919, John A. Edwards, with the knowledge of Samuel R. Edwards, commenced to involve third persons in possible danger by using the land as his own, free from lien. Samuel R. Edwards did nothing. In March, 1922, John A. Edwards importuned Samuel R. Edwards to take action to determine whether John A. Edwards owed the estate. Samuel R. Edwards did nothing. In April, 1922, John A. Edwards executed the mortgages to the Central Trust Company, and that company and the Rutland Savings Bank became involved. In 1924 the commission mortgage was foreclosed. Had a supplemental inventory, containing the notes, been filed before the foreclosure suit was commenced there would have been record evidence the will did create a definite lien on the land, and whether the Central Trust Company had a first lien could then have been determined. The matter drifted two years

more, and the Pedrojas became involved, and more than three years later Samuel R. Edwards commenced this action to enforce the lien.

Samuel R. Edwards says, in effect, there was the will all the time, and the subsequent mortgagees and purchasers could have found out about the notes by asking him.

The Central Trust Company investigated the title to the land, perfected the abstract, as it believed, used its judgment and advanced $32,000 on a mortgage believed to be a first lien. The Rutland Savings Bank investigated the title disclosed by the abstract with affidavits attached and approved the title. The Pedrojas investigated the title, used their best judgment, and invested $26,600 in cash in the land. Mortgagees and purchasers paid their money in perfect good faith. After a full trial the district court stated, as a conclusion of law, that the Central Trust Company, the Rutland Savings Bank and the Pedrojas were innocent purchasers.

There was no testimony that the mortgagees and purchasers relied specifically on the fact Samuel R. Edwards had made a record in the probate court which excluded the fact of lien. Plaintiff may or may not have a nice point about whether mortgagees and purchasers ought to have done something more than they did do in finding out whether they could safely deal with title to the land. But because of the conduct of Samuel R. Edwards they were left to explore a field outside the record. The question of diligence in exploring a field of this character is always relative. Experts may not agree. A court must finally decide, and in finally deciding the court must frequently choose between two views, both of which may be reasonable. The mortgagees and purchasers never would have been exposed to danger of failing to do something which a court might ultimately say they should have done, if plaintiff had done what the law required him to do. He had power to prevent any question from arising. After that the courts were open to him to forestall consequences of a wrong view, and the bringing of the lawsuit after such dilatoriness was against public policy. Sleeping on known rights opens the way to speculation in stale and doubtful claims, to disturbance of titles, and to the breeding of turmoil where peace and repose ought to prevail.

Plaintiff contends that the mortgagees and purchasers must take the position that plaintiff is barred from asserting his claim by mere lapse of time. The foregoing is sufficient to dispose of the contention, but another circumstance may be adverted to.

The district court returned the following finding of fact:

"In 1922 John A. Edwards was in good, substantial financial condition, 'a going concern,' meeting all his obligations. In 1929 he had nothing. He testified that 'all he had in 1929 was hope.'"

Plaintiff objected to the finding as not sustained by evidence and as immaterial, and prints the testimony of John A. Edwards:

"Q. In the year 1922 what was your financial condition? A. My condition in that year was—

"Q. Not conclusions, but— A. I was in good, substantial condition at that time.

"Q. In possession of tracts of land? A. A great many.

"Q. Livestock? A. A great many.

"Q. Credit? A. Over credit—too much.

"Q. Where did you have credit at that time? A. I doubt very much if there was any bank in Kansas City but where I had credit. At that time I owed the Commerce Trust Company over two hundred thousand dollars, and Peter Goebel's bank over two hundred thousand dollars.

"Q. Had you had that credit the preceding year? A. I had built it up from 'way back.'

"Q. Where were you living? A. In Eureka.

"Q. Were you interested in a banking institution? A. I was chairman of the board of directors of the First National Bank and a stockholder in two banks in Kansas City.

"Q. In 1929 what was your condition, Mr. Edwards? A. Well, in 1929 I was convalescent.

"Q. Had your lands been attached at that time? A. I didn't have any lands in 1929.

"Q. What was your financial condition as compared with 1922—better or worse? A. There wasn't anything in 1929 to compare with 1922, because all I had in 1929 was hope."

The testimony was very material. Laches takes into account all the consequences which may result from delay. It is a fair inference from his testimony that if John A. Edwards had not been permitted to use the land as security for the Central Trust Company loan he could have supplied his needs elsewhere. If his privilege to mortgage the land to the Central Trust Company had been questioned promptly after the mortgage was made, he could have taken care of it, and there would now be no lawsuit here, threatening the trust company, the savings bank and the Pedrojas with great loss.

Whether laches bars action depends on the special circumstances of the case. While delay under certain typical classes of circumstances is recognized as sufficient to raise the bar, any catalogue of circumstances would be illustrative only and not definitive. There-

fore, it is not necessary to expand this opinion to include quotations from authorities in which it was held the facts did or did not constitute laches.

The conclusions of the district court that the action was barred by laches, and the titles of the Central Trust Company, the Rutland Savings Bank and the Pedrojas should be quieted are approved, and the judgment of the district court is affirmed.

HARVEY, J., not sitting.