No. 35,029

ALEX HOTCHKISS, as Administrator of the Estate of Lew Dawson, Deceased, and CHARLOTTE J. PRICE, *Appellees*, v. OWEN OGLE and MRS. OWEN OGLE, His Wife, CHARLES DAWSON and ALBERT M. CASTEN, *Appellants*. HARRY A. DAWSON (if alive, but if dead, then His Unknown Heirs, etc.), LAWRENCE DAWSON et al., *Appellees*.

(109 P. 2d 184)

Opinion filed
January 25, 1941.

*Ralph E. Page,* of Ottawa, and *Albert M. Casten,* of Quenemo, for the appellants.

*Alex Hotchkiss,* of Lyndon, and *Barton E. Griffith,* of Topeka, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This was an action on a promissory note and to foreclose a real-estate mortgage given to secure it. The trial court rendered judgment for plaintiffs, and defendants have appealed.

The record may be summarized as follows: On February 14, 1934, Owen Ogle executed a note for $4,500 payable to Lew Dawson, due in five years, with interest at five percent, payable annually, and secured the same by a mortgage upon certain land in Osage county. On September 27, 1934, Lew Dawson died intestate and left as his heirs at law his sister, Charlotte J. Price, and his brother, Charles Dawson. He had another brother, Harry A. Dawson, but he moved away from the neighborhood years ago and his brother and sister did not know whether he was living, and if not, whether he left heirs. Lew Dawson had an account of several hundred dollars in a bank. On their executing an instrument satisfactory to the bank, Charlotte J. Price and Charles Dawson were permitted to draw the money from the bank, with which they paid the funeral expenses of Lew Dawson, and divided the remainder between them. When the first interest was due on the $4,500 note in February, 1935, Ogle paid it to Charles Dawson, who kept out of it money he said Lew owed him and divided the remainder with his sister, Mrs. Price. When the interest was due the next year it was paid to Charles Dawson. When his sister asked for her part of it a few months later he said he had spent it, and she concluded to let the matter go until the note itself became due. A few months before the note was due Mrs. Price learned Charles Dawson was claiming to be the owner of the note and mortgage and that it was in the possession of Albert M. Casten, who claimed to be holding it as a pledge for money advanced to Charles Dawson. On October 21, 1938, Alex Hotchkiss was appointed administrator of the estate of Lew Dawson, and on June 8, 1939, this action was filed. The plaintiffs were Alex Hotchkiss,

as administrator of the estate of Lew Dawson, and Charlotte J. Price. The defendants were Owen Ogle and wife, Charles Dawson, Albert M. Casten and Harry A. Dawson, if living, but if dead, then his unknown heirs, etc.

The petition contained the usual allegations, including most of the facts above stated; alleged that the action was prosecuted for the benefit of the heirs of Lew Dawson, for which reason Charlotte J. Price was joined as plaintiff; that plaintiffs did not know whether Harry A. Dawson was living or dead, or if dead, the names or whereabouts of his heirs, etc.; that Charles Dawson was made a defendant because he denied plaintiffs' right to the note or mortgage; that these instruments were then in possession of Charles Dawson and Albert M. Casten, and they were asked to set up any right or title they had to them; alleged the note was past due and the mortgage in default, and asked for judgment on the note against Owen Ogle and for the foreclosure of the mortgage.

The answer of Charles Dawson in effect demurred to the petition on the ground that there was a misjoinder of plaintiffs, a misjoinder of causes of action, and that the facts alleged did not state a cause of action in favor of either of the plaintiffs. It pleaded a settlement between Mrs. Price and Charles Dawson of the estate of their brother, and that she was estopped from claiming an interest in the note by reason thereof, and alleged that subsequent to the execution and delivery of the note and mortgage to Lew Dawson he delivered them to Albert M. Casten and orally directed that upon his death they be delivered to Charles Dawson, intending by such delivery to make a gift of the note and mortgage to Charles Dawson; that about October 1, 1934, Casten did deliver the instruments to Charles Dawson, who since has been the exclusive owner of them, and that Mrs. Price had full knowledge of his claim of ownership and acquiesced therein. There was a plea of the statute of limitations and a prayer that plaintiffs take nothing by reason of their petition, and that they be barred from any interest in the note and mortgage.

The answer of Owen Ogle was that Charles Dawson was the owner of the note; that plaintiffs have no interest therein, and that the allegations of the petition were insufficient to state a cause of action in favor of either of them. The answer of Albert M. Casten pleaded the statute of limitations, alleged Charles Dawson was the owner of the note and mortgage, alleged the administrator was not

the real party in interest, that the allegations were insufficient to state a cause of action in favor of Charlotte J. Price, that neither of the plaintiffs has any right to foreclose the mortgage, and alleged that he had possession of the note and mortgage under an agreement with its owner, Charles Dawson, who had pledged it with him to secure moneys advanced. Plaintiffs' reply denied the new matter in these answers.

While the action was pending it was learned that Harry A. Dawson had died, leaving two sons, Lawrence Dawson and J. W. Dawson, and two grandchildren, Jack Dawson and Peggy Dawson, minors, children of a son, Barney A. Dawson. These parties lived at Elma, Wash., where Mollie A. Carroll had been duly appointed as the guardian of the estate of the minors. These heirs of Harry A. Dawson answered as defendants denying the claims of Charles Dawson and Albert M. Casten, and by cross petition collectively claimed a one-third interest in the note and mortgage, and asked that the mortgage be foreclosed.

No answer denied the execution of the note and mortgage, nor denied that the note was due and unpaid and the mortgage in default. The appointment of the administrator and the relationship of the parties to Lew Dawson, as alleged by plaintiffs, were stipulated. Plaintiffs introduced evidence of the death of Harry A. Dawson and of who constituted his heirs, and rested. The demurrer of defendants to plaintiffs' evidence was overruled. The court rendered judgment against Owen Ogle and wife on the pleadings and held the burden of proof to be on Charles Dawson and Albert M. Casten respecting the claim of Charles Dawson to the ownership of the mortgage and Casten's claim to be holding them as security for money he had advanced to Charles Dawson.

Defendants called as a witness the plaintiff, Charlotte J. Price. She testified that after the death of her brother Lew, and it was learned he had some money in the bank, at the request of the bank and in order to draw the money, she and her brother Charles signed a written statement to the effect that the estate of their brother, Lew Dawson, had not been administered upon, that they were the only heirs at law, and they would hold the bank harmless if the money were paid to them; that she drew the money, paid the funeral expenses, and there was left $157.90, which was divided with her brother Charles; that her brother Harry had gone west many years ago and she had lost track of him and his family, except that some-

one several years ago had sent her a newspaper clipping giving an account of his death, which she sent to her brother Charles, but that she knew nothing about what children, if any, he had left; that her brother Lew had left a little personal property—two horses and farm implements, all old—which she and her brother Charles divided; that while they were doing this nothing was said about this note and mortgage; that she went to the office of Mr. Casten and inquired if her brother had left a will. "He [Casten] stated there was no will, but some other papers of Lew's, if anything happened to him to give them to Charley and it was no gift." He did not show her the papers at that time, but did so on a later visit. In the fall of 1934 she learned at the courthouse of the mortgage, when it was dated and when it would be due; that in the spring or early summer of 1935 she went to see her brother Charles and asked him if he had collected the interest from Ogle. He said he had, $225. She told him she would like her part of it. He said Lew owed him some money and there was only $25 to divide. He gave her a check for $15, being half of the interest to be divided, and $2.50 for a plow that had been sold; that, in the spring or summer of 1936 she went to see her brother Charles again and asked him if he had collected the interest. He said he had. She asked him what he had done with the money. He said he had used it to pay his debts. She told · him she could use her part of it, and he told her that he would have some wheat to thresh later on and he could pay her then. It appears he did not pay when he threshed and she did not see him again. She testified that she thought the thing to do was to let it go until the note was due, and settle it all together; that in the summer of 1938 she learned, through rumor, that Charles was claiming the entire note; that she then consulted an attorney, with the result that an administrator was appointed and this action was brought.

Charles Dawson testified that his sister, Mrs. Price, and he talked about the money in the bank and signed the statement which permitted them to withdraw the money, pay funeral expenses and divide the remainder, also about the division of the small amount of personal property. In these respects there is no conflict in the testimony. He testified that in the spring of 1935 Mrs. Price came to him and inquired about the interest, and he told her he had collected it but that he claimed it as his own. He told his sister that Lew owed him all but $25 of the interest. He said he gave her a check for $15, which included $2.50 for a plow, but testified he

claimed the interest as his; that he only paid it to keep her from bothering him; that in 1936, when she talked to him about it, he claimed the interest as his own, and denied that he refused to pay it when he threshed.

Albert M. Casten testified that he drew the note and mortgage, and that Lew Dawson had left them with him. Over the objection of plaintiffs he was not permitted to testify what Lew Dawson told him to do with the note and mortgage in the event of his death, but in his affidavit in support of a motion for a new trial he said, if permitted, he would have testified that Lew Dawson told him to deliver the note and mortgage to Charles Dawson in the event of his death. So the evidence sought to be admitted by defendants eventually got before the court.

The note had not been endorsed, nor the mortgage assigned, and there was no written communication from Lew Dawson. On this evidence the court held there was no proof of a valid gift of the note and mortgage by Lew Dawson to his brother Charles.

The court offered to hear evidence in support of the claim of the defendant Casten of any indebtedness of Charles Dawson to him which would be a charge upon Charles Dawson's interest in the note and mortgage. At this point the defendant Casten withdrew his claim and offered no evidence in support of it. Judgment was entered for plaintiffs.

Appellants argue that since there were no claims against the estate except those paid soon after the death of Lew Dawson, and since the time for filing claims had passed, that there was no justification for the appointment of an administrator, citing *Richards v. Tiernan,* 150 Kan. 116, 91 P. 2d 22; *Hampson v. Stanfield,* 152 Kan. 333, 103 P. 2d 910. While the rule contended for was properly applied in the cases cited it is not a universal one. (*Nickel v. Vogel,* 76 Kan. 625, 633, 92 Pac. 1105; *Ekblad, Adm'r, v. Hanson,* 85 Kan. 541, 117 Pac. 1028; *Glathart v. Madden,* 122 Kan. 563, 568, 253 Pac. 426; *Richards v. Tiernan,* supra, p. 119.) Under our statute as it existed at the time of the death of Lew Dawson, there are many circumstances under which it is proper to have an administrator appointed, even though the purpose of his appointment and of any action he might bring would be for the benefit of heirs. (See cases *supra.*) The appointment may be made to provide an appropriate party for an action (23 C. J. 1003), or on account of succession taxes (*Glathart v. Madden,* supra). Here both these reasons existed.

But this is not an appeal from, or in any way a direct attack upon, the order appointing the administrator. His due appointment was stipulated.

It is argued, also, that there was a misjoinder of parties plaintiff. The petition frankly alleged the action was brought for the benefit of heirs, that one of them had joined as plaintiff, and she made no claim to the entire estate, but only to her distributive share as an heir. Such procedure is authorized (G. S. 1935, 60-403, 60-410, 60-412). There was no conflict in the relative purposes of the plaintiffs. The joinder of plaintiffs here did not prevent defendants from making their defense, nor otherwise operate to their prejudice. (*Sentney v. Commercial Nat'l Bank,* 128 Kan. 107, 275 Pac. 1081; *Phoenix Mutual Life Ins. Co. v. Nevitt,* 147 Kan. 772, 78 P. 2d 913.)

Appellants also argue that several causes of action were improperly joined, the one being to try title to the note and mortgage and the other being to recover on the note and to foreclose the mortgage. There is no confusion on that point of which defendants can complain. It is conceded the note was past due and unpaid and the conditions of the mortgage had been broken; in fact, the only controverted issue in the case was raised by the answer of the defendant Charles Dawson.

His answer attempted to raise two questions: *First,* that there had been a family settlement by which he was to have this note and mortgage. It is clear the evidence on his behalf did not support that claim. *Second,* that he was the sole owner of the note and mortgage by reason of a gift of them to him by his brother, Lew Dawson. On that point, also, the evidence on defendant's behalf totally failed.

Defendants in the court below, as appellants here, argue this last question as though the burden of proof was on plaintiffs to negative such a gift. Obviously this is not true. Charles Dawson had alleged these defenses; he had the burden of proving them, and they are of a character which required clear and convincing evidence. Nothing approaching that was offered. Even the testimony of Casten, finally embodied in an affidavit in support of the motion for a new trial, to the effect that Lew Dawson had said that if anything happened to him to deliver the papers to his brother Charles, without stating for what purpose they were to be delivered, was insufficient to establish a valid gift. It is equally consistent with the view that he wanted

his brother Charles to look after the collection of the note and mortgage and make proper disposition of the proceeds.

We find nothing wrong with the judgment of the court. It is therefore affirmed.