No. 41,019

Caspar Degenhardt, Administrator of the Estate of Margaret Degenhardt, Deceased, *Appellant*, v. John J. Degenhardt, *Appellee*.

(326 P. 2d 288)

Opinion filed June 7, 1958.

*Harold H. Chase,* of Salina, argued the cause, and *Delmas L. Haney,* of Hays, was with him on the briefs for the appellant.

*Norman W. Jeter,* of Hays, argued the cause, and was on the brief for the appellee.

The opinion of the court was delivered by

JACKSON, J.: Appellant brought an action in the court below against appellee to set aside two deeds to two separate pieces of real estate in Ellis county, and for an accounting of rents and profits. Appellee filed certain motions to make definite, to strike, and to compel election. The amended petition containing two causes of action, one cause referring to each piece of real estate, was filed. Thereafter, appellee demurred generally on the ground "that neither of said causes of action as contained in said petition states facts sufficient to constitute a cause of action against the defendant and in favor of the plaintiff."

After the matter had been fully considered by the trial court, the demurrer was sustained as to both causes of action. Plaintiff has appealed, and we shall refer to the parties hereinafter as plaintiff and defendant.

We are advised that plaintiff and defendant are brothers, and sons of Margaret Degenhardt, deceased, and that there were twelve other children in the family besides these two sons.

The first cause of action in the amended petition involves a half section of land in Ellis county, which the amended petition alleges was conveyed to the defendant son on July 13, 1931; it is further alleged that said deed was recorded on the day of its execution and that defendant went into possession of the farm and since said date occupied said real estate; a copy of the deed is attached to the amended petition as an exhibit. It was further alleged that the deed was executed in accordance with a certain written contract between defendant son and his mother, as recited in the deed, that defendant son would maintain, support, care for and provide a

comfortable living for the mother. A copy of the contract was attached as an exhibit and made a part of the petition. It was further alleged that defendant son failed to perform the promises and conditions in said agreement; "that the said Margaret Degenhardt died at the age of 72 years on 18 February 1943, infirm in body and mind and because of her infirmities was unable, and had been unable for at least five years prior to her death, to assert any of the rights granted her under said contract to bring an action for the cancellation of said deed."

It was further alleged in the first cause that the "said agreement and deed was an attempt to make a testamentary disposition of the property of Margaret Degenhardt" and should be declared void, set aside and held of no effect.

It should be noted that the copy of the written agreement attached to the pleading as an exhibit contains provisions relating to the rights of the mother should defendant son fail to carry out his obligations under the contract. They read as follows:

"It is further agreed that the said conveyance of said real estate shall be in full payment and compensation for the services to be rendered hereunder by said parties of the second part to said party of the first part, and that in case the said parties of the second part shall refuse, fail, or neglect to comply with the terms of this agreement or shall fail, neglect or refuse to properly care for, support, maintain, nurse, give medical attendance, hospital care, or shall neglect, fail or refuse, in any other manner to fulfill, their several promises and agreements above enumerated, punctually, and at the time or times and in the manner above stated, then and in such event this agreement, together with said deed and conveyance, shall, at the option of the said party of the first part become null and void, and said party of the first part shall have the right and privilege to bring an action to cancel the said deed given, and the conveyance of said real estate made, and recovery possession of said real estate, or in lieu thereof, said party of the first part shall have the right to proceed by proper legal action, in any court of competent jurisdiction, and sell said real estate, or so much thereof as may be necessary to give her proper care, maintenance, and support, and such medical, surgical, nursing or hospital care as may be necessary, and in such event all services rendered, or payments of money made by said parties of the second part to said party of the first part shall be retained by her as liquidated damages, *provided however that such action to cancel said deed, and conveyance, or action or proceeding to sell said real estate for the support and maintenance of said party of the first part shall be absolutely personal to her, and after her death said deed, shall be and become absolute, and shall not be subject to any action for non-performance of any of the terms and conditions of this contract, by any heir or personal representative of said party of the first part.*

"That this agreement shall be binding upon the heirs, devisees, executors and administrators of said parties of the second part, and in case said parties of the

second part shall predecease said party of the first part, then this agreement shall and may be completed by the heirs, devisees, executors and admistrators of said parties of the second part." (Italics supplied.)

The second cause of action of the amended petition involved a warranty deed to a residence property in the village of Pfeifer, Ellis county, which it was alleged had been filed for record on February 23, 1943, after the death of the mother on February 18, 1943; a copy of the deed was attached to the amended petition and shows that the mother as grantor conveyed the title to the real estate in question to defendant son subject to the reservation of a life estate to the mother therein.

The second cause of action contained the following allegations in relation to the deed to the residence property:

"2. That said deed was never executed by the deceased Margaret Degenhardt on the date it purports to bear and, if the same was executed, no delivery of said deed was made prior to the death of the said Margaret Degenhardt and said property was and is a part of the estate of the said Margaret Degenhardt, deceased, and the petitioner as administrator thereof is entitled to the possession thereof.

"3. That if said deed was executed on the date it purports to bear, then the same was an attempted testamentary disposition of said real estate which, lacking the formalities of a testamentary instrument, is void, of no effect, and said property was and is a part of the estate of the said Margaret Degenhardt, deceased, and the petitioner as aforesaid is entitled to the possession thereof."

From the above summary of the amended petition it will readily appear that while there are questions whether either of the two causes of action states sufficient facts to be sufficient against the defendant's demurrer, the determinative issue as to both causes is as to the statute of limitations and laches. The deed to the farm was filed of record on July 13, 1931, and the defendant went into possession immediately. Defendant had been in possession of the farm under the deed for almost twenty-six years when the original petition was filed in this suit on March 7, 1956. The mother had been deceased for thirteen years when the suit was filed.

Plaintiff seeks to excuse delay on the ground that it was alleged that the mother was infirm and unable to assert her rights under the contract as to the farm during the last five years of her life. But even as to that, it may be noted that plaintiff as a son and his other brothers and sisters might have sought the appointment of a guardian for her estate and person if they were dissatisfied with the arrangements which must have been known to them. However, assuming that the mother's infirmities, as alleged, did toll the

running of the statute of limitations and laches until the mother's death, some thirteen years passed thereafter before the filing of this action.

Plaintiff further argues that the running of all limitations were further tolled until his appointment as administrator of his mother's estate in 1956, and relies upon *Carney v. Havens*, 23 Kan. 82, and *Mills v. Mills*, 43 Kan. 699, 23 Pac. 944, to support this contention.

Those cases do not sustain plaintiff's argument. The Carney and Mills cases only purport to apply to causes which did not become due until after the death of the decedent, according to the terms of the contract or situation giving rise to the cause of action. They do not apply under the circumstances surrounding the estate of Margaret Degenhardt, deceased. Obviously, there was no necessity to have an administration of Margaret's estate except for supposed convenience in bringing the purported actions herein. It would seem that plaintiff or any of the other children might well have started such actions at any time after Margaret's death and the payment of debts, as heirs at law and owners of interests in property which allegedly should be a part of her estate.

The case of *Glathart v. Madden*, 122 Kan. 563, 253 Pac. 426, is quite pertinent to the question of the running of limitations in the case at bar. There a sister had belatedly obtained appointment of herself as administratrix and was suing her brother to obtain an accounting for assets allegedly belonging to the estate of their common ancestor, and so to the sister as an heir of the estate. The court said:

"P. D. Brown died on December 19, 1917. After February 7, 1920, claims of creditors against his estate, if there were any, were barred. After that, no person in existence was interested in requiring W. J. Madden to render an account of his conduct as P. D. Brown's agent, except Mollie Glathart. By changing the petition which she filed to state that Brown died intestate, that she and Madden were his only heirs, and that no administrator of his estate had been appointed, she could have filed the petition in her individual capacity, to obtain the relief she prayed for as administratrix. The district court possessed the same power to compel discovery and to require an accounting for her benefit as an individual that it possessed to compel discovery and to require an accounting for her benefit as administratrix. If she were successful, the same result would be attained, with this difference: Suing as an individual, she would recover one-half the amount due from Madden to Brown's estate. The other half would belong to Madden. Suing as administratrix, she would take the entire sum found due from Madden to the probate court, the probate court would deduct the costs of administration, including an allowance

to the administratrix, the probate court would order her to pay back to Madden one-half the remainder, and she would keep the other half. Defendant could not object to her suing in her individual capacity, because it was sufficient for him that he would not be denied privilege to urge whatever defenses he might have.

"The law favors economy, prefers direction to indirection, and is definitely committed to a policy of repose. The statute of limitations may not be evaded by circuitousness. The principle involved is that the record is searched for the essence of the controversy and the real party in interest, and application of the statute is considered as it affects them. A statement of the principle, and a negative application of it, appears in *Horton v. Jones,* 110 Kan. 540, 204 Pac. 1001:

" 'In applying statutes of limitation, courts are not concluded by the names of the parties to an action, but look to the merits of the controversy, the nature of the relief, and the effect of the judgment. The nominal plaintiff is passed by, the record is examined to ascertain who is the real party in interest and, if the real party in interest be not barred, the nominal plaintiff is not barred.' " (p. 541)

"Strike from the concluding portion of the quotation the word 'not' and a positive application of the principle is stated.

"The action of Mollie Glathart as administratrix was based on implied contract of the agent to pay money and the value of property due to his principal, on an accounting. Regarded as an action by Mollie Glathart for her share of her grandfather's estate, it was based on the implied contract of her brother to pay money and the value of property received and held for her use and benefit. The three-year statute of limitations applies to a cause of action of this nature. The action was commenced five years and eight months after Brown's death, and more than three years and six months after Mollie Glathart's interest in his estate had ripened to unqualified ownership.

"Plaintiff confidently relied, and the district court evidently rested the judgment, on the cases of *Carney v. Havens,* 23 Kan. 82, and *Mills v. Mills,* 43 Kan. 699, 23 Pac. 944. Those cases involved claims in favor of the estates of deceased persons. In each one no cause of action accrued until after death of the creditor. The court held the running of the statute of limitations in favor of the debtors was suspended until, by appointment of an administrator, some one was in existence who could bring suit.

"In the case of *Toby v. Allen,* 3 Kan. 399, the court said death of a debtor suspends the statute of limitations until an administrator is appointed, because there must be a party to be sued. In the case of *Nelson, Adm'r, v. Herkel, Adm'r,* 30 Kan. 456, 2 Pac. 110, the syllabus reads:

" 'Not only must there be a person to sue, but a cause of action cannot accrue or exist unless there is a person in being against whom an action can be brought and the right of action enforced. *Held,* therefore, that the death of the debtor operates to suspend the statute of limitations until an administrator is appointed.' "

"In the case of *Bauserman v. Charlott,* 46 Kan. 480, 26 Pac. 1051, the question was whether death of a debtor suspends the statute indefinitely—a ques-

tion not presented to the court in any previous case. In the opinion prepared by Chief Justice Horton, who had written the opinion in the case of *Nelson v. Herkel*, it was said:

> " 'It is also true that this court has said that the death of the debtor operates to suspend the statute. (*Toby v. Allen*, 3 Kan. 399; *Hanson v. Towle*, 19 id. 273; *Nelson v. Herkle*, 30 id. 456; *Mills v. Mills*, 39 id. 455.) But this court has never said, when the question was properly presented, that the creditor can indefinitely prolong the time of limitation by his own omission or refusal to act, or that the death of the debtor operates to suspend the statute of limitations indefinitely.' " (p. 483.)

"It will be observed the case of *Mills v. Mills*, relied on by plaintiff in the present action, was cited. The opinion emphasized the sound policy of statutes of limitation, and it was held that if a creditor would save his claim against a decedent from bar of the statute, he must use diligence to take out letters of administration for himself or some other person.

"In this case, it is sufficient to say the court has never held, when the question was properly presented, that death of a creditor operates to suspend the statute of limitations indefinitely. To do so would defeat the policy of the statute. One who is privileged to sue on his own account without appointment of an administrator should do so, and should do so within the statutory period. His situation is analagous to that of a creditor of a decedent, who may end suspense by procuring appointment of an administrator. He should not be allowed to circumvent the statute by having himself appointed administrator and bringing suit in his representative capacity for his sole benefit as an individual, after direct action in his own behalf has become barred. It may be observed here that in this instance plaintiff was next of kin and preferred by law for appointment as administrator, and the court has not said, in any case in which the question was properly presented, that such a person may prolong the time of limitation indefinitely by omission or refusal to act." (p. 569.)

Attention is directed to the cases of *Richards v. Tiernan*, 150 Kan. 116, p. 120, 91 P. 2d 22, and *In re Estate of Moore*, 161 Kan. 603, p. 609, 170 P. 2d 838, in which the decision in *Glathart v. Madden*, supra, is approved, and the rights of heirs at law are discussed as to situations which do not necessitate administration of the estate of their intestate.

The plaintiff has not suggested any reason why the first cause of action is not barred by the usual five year statute of limitations relating to rights arising from written contracts (G. S. 1949, 60-306, *First*). The rights of the mother in the farm under her warranty deed and the written contract for support by the defendant son— which plaintiff contends became vested in him as a representative of the heirs at law of the mother—were only for security purposes to insure the carrying out of the contract for support of the mother by the defendant. The mother's interest amounted in fact to a

lien on the land to secure performance of the contract. Any claim for non-performance on the part of defendant has clearly been long since barred during the thirteen years since the mother's death in 1943. The situation can be aptly compared to a real estate mortgage. It has long been the law of this state that when the mortgage note has been barred by the five year statute of limitations, the lien of the mortgage can no longer be enforced. (See *Hubbard v. Missouri Valley Ins. Co.*, 25 Kan. 172; *Kulp v. Kulp*, 51 Kan. 341, 32 Pac. 1118; *Hege v. Suderman*, 142 Kan. 495, 51 P. 2d 23; *Troxell v. Cleveland Oil Co.*, 145 Kan. 658, 66 P. 2d 545.)

It will readily appear from the above statements that the court is not impressed with plaintiff's allegations that the deed and contract involved in the first cause of action constituted a testamentary disposition. It also may be pertinent to briefly say that the court is not impressed with the same contention as to the second cause of action. A warranty deed containing a reservation of a life estate to the grantor is certainly not a testamentary disposition. The bare allegations of the amended petition as to testamentary dispositions are controlled by the terms of the deeds and contract attached thereto as exhibits. (See *Zane v. International Hod Carriers B. & C. L. Union*, 155 Kan. 87, 122 P. 2d 715; *Wood v. Stewart*, 158 Kan. 729, 150 P. 2d 331.)

Moreover, considering all of the claims attempted to be set forth in both causes of action contained in plaintiff's amended petition, it is plain that plaintiff is seeking the aid of a court of equity. Courts of equity will regard long passage of time in asserting claims with disfavor apart from any particular statute of limitations. The doctrine of laches is designed to bar stale claims. The plaintiff argues that mere passage of time is not enough to invoke the doctrine. It may be readily assumed that defendant has paid taxes on the real estate, has made repairs and done many other things during all of the years in which plaintiff and the other heirs of Margaret Degenhardt, deceased, have been content to sleep on their alleged rights. Nowhere in the amended petition do we find even an attempted excuse for the delay of thirteen years between the death of the mother and the beginning of this lawsuit.

In the case of *Preston v. Shields*, 159 Kan. 575, 156 P. 2d 543, the court said in part:

"Appellant predicates the relief sought upon the equitable doctrine a trust was established and that he is entitled to an accounting from the alleged trustee. It has been held that such a suit must be determined by equitable

principles of estoppel and not by statutes of limitation. (*Preston v. Kaw Pipe Line Co.*, supra.) Of course, where a petition on its face discloses laches and that it would be inequitable to grant the relief sought, as does the instant petition, it may be challenged by demurrer on the ground it fails to state a cause of action or, probably more accurately stated, upon the ground the petition on its face affirmatively discloses the party is not entitled to the relief sought."

In *McKee v. McKee*, 154 Kan. 340, 118 P. 2d 544, it was said:

"While lapse of time alone will not ordinarily support a defense of laches, it has been held sufficient to make the doctrine applicable in cases where it would be clearly inequitable to permit the enforcement of bare legal rights (19 Am. Jur. 352, § 508), or where the delay in asserting rights has been wholly unreasonable (21 C. J. 220, § 218). However, we have here much more than mere lapse of time. We have acquiescence on the part of appellee—an important factor in determining whether there has been such laches as will bar recovery. (21 C. J. 224, 225, § 219; 10 R. C. L. 397, 398, § 144, note 17.)"

See also *Calkin v. Hudson*, 156 Kan. 308, p. 318, 133 P. 2d 177; *Templing v. Bennett*, 156 Kan. 68, p. 72, 131 P. 2d 904; *Edwards v. Moore*, 143 Kan. 447, 54 P. 2d 933, and authorities cited.

The trial court correctly sustained the demurrer to both of plaintiff's causes of action and the ruling is affirmed.

It is so ordered.